OHIO EDISON COMPANY, APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Ohio Edison Co. v. Pub. Util. Comm. (1981),
67 Ohio St. 2d 230.]

(No. 80-1509—Decided July 15, 1981.)

*Mr. Russell J. Spetrino, Mr. Anthony J. Alexander* and *Mr. Michael L. Gribler,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Ms. Jane L. Miller,* for appellee Public Utilities Commission.

*Mr. William A. Spratley,* consumers' counsel, and *Mr. Martin J. Marz,* for intervening appellee Office of the Consumers' Counsel.

*Per Curiam.* The focal point of this case is whether the costs resulting from the appellant-NACCO interim agreement, designed to ensure NACCO a $1.644 per ton profit and to assist NACCO in making capital improvements, are includable fuel costs, pursuant to Ohio Adm. Code 4901:1-11-01 (D). [1] In answering this question, we are mindful of the fact

---

[1] Ohio Adm. Code 4901:1-11-01, in part, provides:

"(D) Includable Fuel Costs.

"Includable fuel costs are those direct and justifiable consumed fuel costs attributable to the includable kilowatt-hours. These costs shall equal the direct cost of fuel F.O.B. at the plant plus the fuel cost attributable to purchased power, less the fuel charges attributable to power sold for resale, and less the fuel charges attributable to any additional kilowatt-hours to be excluded that were sold within the State of Ohio, but outside the jurisdiction of the Public Utilities Commission."

that appellant, pursuant to R. C. 4909.191 (C),[2] has the burden of demonstrating that its costs are fair, just and reasonable. It should also be noted that this court will not disturb the findings and order of the commission unless it appears from the record that such findings and order are manifestly against the weight of the evidence and are so clearly unsupported by the record as to show misapprehension or mistake or willful disregard of duty. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, paragraph eight of the syllabus, certiorari denied 423 U. S. 986.

R. C. 4909.191 (D) [3] empowers the commission to order a customer refund if a utility's rates result from, *inter alia*: errors, imprudent or unreasonable fuel procurement policies and practices, or such other practices, policies, and factors as the commission considers appropriate. We have reviewed the entire record in this case and conclude that the commission's order is amply supported by the facts.

Initially, the record demonstrates that, whether inadvertently or otherwise, appellant paid NACCO an amount in ex-

---

[2] R. C. 4909.191, in part, provides:

"(C) The electric light company shall demonstrate at the hearing on its fuel component that its acquisition and delivery costs were fair, just, and reasonable. The public utilities commission shall consider, to the extent applicable, at each hearing on a fuel component:

"(1) The efficiency of the electric light company's fuel procurement practices and policies;

"(2) The results of financial audits;

"(3) The results of performance audits;

"(4) Compliance by the company with previous commission performance recommendations;

"(5) Such other factors as the commission considers appropriate. The requirements of divisions (C) (2) and (3) of this section shall not apply to an expedited hearing held pursuant to division (E) of this section."

[3] R. C. 4909.191, in part, provides:

"(D) The public utilities commission shall readjust the rates of the electric light company or order the company to refund any charges it has collected under its fuel component which the commission finds to have resulted from:

"(1) Errors or erroneous reporting;

"(2) Imprudent or unreasonable fuel procurement policies and practices;

"(3) Errors in the estimation of kilowatt hours sold;

"(4) Such other practices, policies, and factors as the commission considers appropriate."

cess of the $1.644 per ton profit that was agreed upon in the interim agreement. Despite the fact that appellant evidently believed that the $1.644 figure *included* the 23.4 cents per ton profit, the evidence proves that appellant paid NACCO $1.644 per ton *and* an additional 23.4 cents per ton. In effect, appellant tendered a double profit payment to NACCO.

Secondly, there is simply no question, based on this record, that appellant paid NACCO for capital improvements which NACCO failed to make.

In essence, then, appellant (1) paid NACCO more than NACCO was due and (2) paid NACCO for structural improvements that never materialized. Hence, the commission correctly concluded that these overpayments were made in contravention of R. C. 4909.191 (D).

We note, significantly, that much of the evidence upon which the commission relied in making its findings and order was evidence directly supplied by appellant itself, through its own audits, investigations, studies and witnesses.

We categorically reject appellant's contention that it is entitled to recover its *actual* fuel cost expenditures. R. C. 4909.191 (C) unambiguously entitles appellant to fair, just and reasonable costs. Appellant's "actual cost" theory, if pursued to its logical conclusion, would enable a utility and a supplier to contract for fuel at disproportionately inflated prices and pass these artificial costs along to the customers. This we refuse to legitimatize. As this court recently and unanimously stated in *Ohio Power Co.* v. *Pub. Util. Comm.* (1978), 54 Ohio St. 2d 342, 344:

"* * * Fuel adjustment clauses are not and may not be permitted to become a carte-blanche authorization to an electric utility to pass through to its tariff customers expenses other than fuel costs fairly attributable to the production of the service to those customers. * * *

"We perceive that the requirement of fairness which compels adjustment in rates to compensate utilities for escalating fuel costs also compels retrospective reconciliation to exclude charges identifiably resulting from unreasonable computations or inclusions."

Finally, we are unable to find—and are unwilling to create —precedent establishing the proposition that the commission

was under a duty to defer its proceedings and order until appellant and NACCO resolved their contractual dispute, either through private negotiation or litigation. We note, parenthetically, that, while the commission issued its order on July 9, 1980, the appellant's litigation with NACCO, in the Court of Common Pleas of Belmont County, did not commence until September of 1980, approximately five months after the commission's hearings concluded and two months after the issuance of the commission's order. [4] While the commission and this court recognize that appellant has considerable discretion in pursuing its legal rights against NACCO, we do not believe that the customers' right to a refund of unjustifiable fuel charges is contingent on the ultimate disposition of the NACCO claim. In our judgment, the critical consideration in cases of this nature is the customers' right to adequate utility service and facilities at just and reasonable rates. See, *e.g., C & SOE* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 175.

For all the foregoing reasons, we find that appellant's costs resulting from the interim agreement with NACCO are not includable fuel costs. The commission correctly concluded that the charges resulting therefrom were not fair, just and reasonable. These conclusions are consistent with the manifest weight of the evidence and amply supported by the record. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm., supra.* Accordingly, the order of the commission is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

---

[4] Appellant's counsel represented during oral argument to this court, on March 31, 1981, that the litigation with NACCO was settled, to appellant's satisfaction, on March 24, 1981.