GREATER CLEVELAND WELFARE RIGHTS ORGANIZATION, INC. ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Greater Cleveland Welfare Rights Org., Inc. *v.* Pub. Util. Comm. (1982), 2 Ohio St. 3d 62.]

(No. 82-288—Decided December 22, 1982.)

*Mr. Joseph P. Meissner,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnick* and *Mr. James R. Bacha,* for appellee.

*Bell & Randazzo Co., L.P.A., Mr. Langdon D. Bell* and *Mr. John W. Bentine,* for intervening appellee Industrial Electricity Consumers Group.

*Messrs. Steer, Strauss, White & Tobias, Mr. F. Bruce Abel* and *Mr. Patrick I. Nesbitt,* for intervening appellee Armco, Inc.

*Mr. William J. Moran, Mr. James J. Mayer* and *Mr. James J. McGraw, Jr.,* for intervening appellee Cincinnati Gas & Electric Co.

*Mr. Alan D. Wright* and *Mr. David W. Whitehead,* for intervening appellee Cleveland Electric Illuminating Co.

*Mr. Richard M. McMorrow* and *Mr. James L. Reeves,* for intervening appellee Columbus & Southern Ohio Electric Co.

*Mr. S. F. Koziar* and *Mr. William E. Herron,* for intervening appellee Dayton Power & Light Co.

*Mr. T. C. Sheppard, Jr.* and *Mr. Edward G. Kennedy,* for intervening appellee Monongahela Power Co.

*Mr. Russell J. Spetrino* and *Mr. Michael A. Gribler,* for intervening appellee Ohio Edison Co.

*Mr. Alan Kessler* and *Mr. Mark C. Scolander,* for intervening appellee Ohio Power Co.

*Mr. James J. Pfeiffer,* for intervening appellee Toledo Edison Co.

KRUPANSKY, J. Sections 114(a) and (b) of PURPA (Section 2624[a] and [b], Title 16, U.S. Code) provide:

"(a) Lower rates. — No provision of this chapter prohibits a State regulatory authority (with respect to an electric utility for which it has ratemaking authority) or a nonregulated electric utility from fixing, approving, or allowing to go into effect a rate for essential needs (as defined by the State regulatory authority or by the nonregulated electric utility, as the case may be) of residential electric consumers which is lower than a rate under the standard referred to in section 2621(d)(1) of this title.

"(b) Determination. — If any State regulated electric utility or nonregulated electric utility does not have a lower rate as described in subsection (a) of this section in effect two years after November 9, 1978, the State regulatory authority having ratemaking authority with respect to such State regulated electric utility or the nonregulated electric utility, as the case may be, shall determine, after an evidentiary hearing, whether such a rate should be implemented by such utility."

In their first proposition of law appellants assert the commission failed to

comply with the provisions of PURPA in the following five respects: (1) the commission did not define and consider the "essential needs" of residential electric consumers in reaching its determination; (2) the commission did not consider lifeline rates based on cost of service, the standard referred to in Section 111(d)(1)[1] of PURPA; (3) the commission only analyzed one of the many justifications for adopting lifeline rates, *i.e.,* providing assistance to low and fixed income individuals; (4) the commission improperly compared lifeline rates to available assistance programs; and (5) the commission rejected social considerations as being irrelevant to their inquiry.

A careful reading of the relevant sections of PURPA reveals a lack of merit in all of appellants' five contentions. As to appellants' first assertion one need only note that Sections 114(a) and (b) of PURPA simply *grant* a state regulatory authority *the power to* adopt or approve a "rate for essential needs" which is lower than a "rate under the standard referred to in section 2621(d)(1)" (cost of service standard). Nowhere in PURPA is there any requirement the commission must define "essential needs." Indeed, a working definition of "essential needs" is unnecessary unless a decision is made to adopt and implement lifeline rates. Therefore, the commission was correct in not undertaking the futile task of defining "essential needs" in the absence of a decision to adopt lifeline rates.

Appellants' second contention may be dispensed with through an examination of Section 111(d)(1) of PURPA in conjunction with Section 114 of that Act. Section 111(d)(1) defines cost of service rates as those rates which reflect the actual cost of providing electric service to a certain class. Section 114(a), which authorizes the adoption of lifeline rates, provides that a state regulatory authority may approve a rate for essential needs "which is lower than a rate under the standard referred to in section 2621(d)(1)" (cost of service). Reading these two sections together it becomes obvious that lifeline rates, by definition, consist of rates which are *lower than a cost of service rate,* not rates which are based on or equivalent to cost of service rates, as appellants contend.

Appellants' third objection relates to the fact that the commission confined its analysis to whether lifeline rates would provide assistance to low and fixed income individuals, thereby ignoring the other justifications normally advanced for the adoption of such rates. First it must be noted that even if the commission had determined lifeline rates would successfully fulfill some of the goals underlying the creation of lifeline rates, there is nothing in PURPA to suggest lifeline rates must be adopted if they are found to be ineffective in advancing another goal. Second, it is clear the commission was

---

[1] Section 111(d)(1) of PURPA (Section 2621[d][1], Title 16, U.S. Code) provides:

"(d). Establishment. — The following Federal standards are hereby established:

"(1) Cost of service. — Rates charged by any electric utility for providing electric service to each class of electric consumers shall be designed, to the maximum extent practicable, to reflect the costs of providing electric service to such class, as determined under section 2625(a) of this title."

keenly aware of the various rationales for lifeline rates when it made its decision. Indeed, in its order and opinion the commission actually enumerated four of the most frequently advanced justifications for lifeline rates and concluded:

"Thus, while there are in fact varied reasons set forth in support of lifeline rates, the predominate belief held by witnesses testifying at this hearing was that the purpose of lifeline rates is to provide assistance to low and fixed income customers by reducing their electric bills. Thus, it is with this goal in mind that the Commission will evaluate the propriety of implementing lifeline rates."

From the above passage it is apparent the commission *did* consider all of the justifications for lifeline rates and determined the major goal to be providing assistance to low and fixed income individuals. The commission's decision to focus on this one aspect of lifeline rates was not erroneous.

Appellants' fourth claim is that the commission acted improperly in comparing lifeline rates to existing assistance programs. It is clear from the opinion that the commission's rejection of lifeline rates was not based on the present availability of adequate assistance programs, but rather, the rejection was based on the conclusion by the commission that lifeline rates would not fulfill the proposed goals and would result in the imposition of inequitable rates. Since the commission determined lifeline rates to be an inappropriate vehicle to aid low and fixed income customers, it seems apparent the rates would not have been adopted even in the absence of existing direct assistance programs. Consequently, the commission's parenthetical reference to the availability of other assistance programs in this area does not constitute error.

Appellants' final assertion under their first proposition of law is that the commission "erred in its absolutist rejection of Social Considerations as a relevant factor in setting utility rates." Appellants' contention apparently emanates from the following excerpt contained in the opinion of the commission:

"The evidence indicates that practically all residential consumers would receive lower bills under lifeline rates. However, in order to make up the revenue deficiency resulting from lifeline rates, high-use residential electric customers must subsidize the lower-use customers. Thus, in an effort to assist low-income customers, those who have greater consumption must subsidize the majority of the residential class. Further, lifeline rates do not even adequately accomplish the intended goal, as a portion of low-income or elderly consumers who happen to have high consumption would not only fail to receive any benefit but would in fact be harmed by even higher electric bills. Nor does the Commission believe it would be equitable to make up the revenue deficiency outside of the residential class of customers. Thus, lifeline rates are an inefficient way to accomplish the intended goal. Even if this were not so, the Commission does not believe that rates should be structured

with such social considerations in mind. The redistribution of income is simply not a ratemaking function."

We do not feel the above-quoted passage demonstrates any "absolutist rejection of Social Considerations" by the commission. Rather, as stated previously, it simply reflects the commission's determination that lifeline rates are an ineffective means to attain the intended goals. Thus, the commission's comment on the inappropriateness of the redistribution of income as a ratemaking function hardly results in reversible error.

It is clear from the face of Section 114 of PURPA the Act only requires a state regulatory authority to hold an evidentiary hearing to *consider* the possibility of implementing lifeline rates. PURPA contains no guidelines on the standards to be used in making this determination, nor does PURPA contain any mandate that lifeline rates must necessarily be adopted. As noted by the United States Supreme Court in *Federal Energy Regulatory Comm.* v. *Mississippi* (1982), ____ U.S. ____, 72 L. Ed. 2d 532, at 540, "[d]espite the extent and detail of the federal proposals [PURPA], however, no state authority or nonregulated utility is required to adopt or implement the specified rate design or regulatory standards." The court also stated, at pages 550-551, that "[w]hile the condition here is affirmative in nature — that is, directs the States to entertain proposals — * * * [t]here is nothing in PURPA 'directly compelling' the States to enact a legislative program. * * *"

Considering all the foregoing, we conclude the commission has fully complied with the provisions of PURPA and we overrule appellants' first proposition of law.

In their second proposition of law, appellants contend the commission "failed to meet its obligations" under R.C. 4905.70. We disagree. The provisions of R.C. 4905.70, as set out above, are even less demanding than those found in Section 114 of PURPA, with R.C. 4905.70 requiring only that the commission "examine and issue written findings on * * * lifeline rates * * *." Both PURPA and R.C. 4905.70 impose no affirmative duty on the commission to consider lifeline rates based on cost of service. Despite the absence of such a requirement the commission has decided to adopt Dr. Stutz's recommendation and consider residential rates on a utility-by-utility basis to determine whether cost-based rates will advance the aims of lifeline. Therefore, we find no merit in appellants' second claim and we overrule this proposition of law.

Appellants' final proposition of law states the commission erred in failing to overturn rulings by the hearing examiner striking certain portions of the testimony of Dr. John Stutz, who testified in part on behalf of appellant Greater Cleveland Welfare Rights Organization. The first portion of Stutz's testimony was stricken when he made reference to a study but was unable to answer questions relating to the basic premises of the study, nor was he then able to produce a copy of the report on the study. Later, Stutz testified to statements made in an article authored by the chairman of the North

Carolina Utilities Commission. These references by Stutz were stricken as inadmissible hearsay when counsel for appellants refused to articulate whether the article was being offered for the truth of the matter contained therein.

Appellants argue it was error for these portions of Stutz's testimony to be stricken because: (1) in proceedings before the commission the hearing examiner is not bound by the strict Rules of Evidence (see, *e.g., Chesapeake & Ohio Ry. Co.* v. *Pub. Util. Comm.* [1955], 163 Ohio St. 252, 263 [56 O.O. 237]); and (2) even if the Rules of Evidence do apply to proceedings before the commission, the stricken testimony is admissible under Evid. R. 703 as "* * * facts or data * * * upon which an expert bases an opinion * * *."

We agree with appellants' contention that the commission is not stringently confined by the Rules of Evidence. The commission, however, is granted very broad discretion in the conduct of its hearings. *Elyria Telephone Co.* v. *Pub. Util. Comm.* (1953), 158 Ohio St. 441, 444 [49 O.O. 391]. Therefore, even if the commission did err in not overruling the hearing examiner's rulings striking portions of Stutz's testimony, it is well-settled that this court will not reverse an order of the commission because of an error of the commission, "if such error did not prejudice the party seeking such reversal." *Cincinnati* v. *Pub. Util. Comm.* (1949), 151 Ohio St. 353 [39 O.O. 188], paragraph six of the syllabus. Viewing the totality of the evidence adduced before the commission in this proceeding we do not feel appellants have been prejudiced as a result of these evidentiary rulings. Appellants' final proposition of law is also overruled.

R.C. 4903.13 provides in relevant part:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

Or, as stated by this court, in reviewing commission decisions the "* * * court will not disturb the findings and order of the commission unless such findings and order are manifestly against the weight of the evidence and are so clearly unsupported by the record as to show misapprehension or mistake or willful disregard of duty. *Ohio Edison Co.* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 230 [21 O.O.3d 144]; *C & SOE* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 120 [12 O.O.3d 122]; *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403 [71 O.O.2d 393], paragraph eight of the syllabus, certiorari denied, 423 U.S. 986." *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 303, 305 [21 O.O.3d 191].

Essentially what appellants request is this court substitute its judgment for the decision of the commission — which we are unable to do. *Cremean* v. *Pub. Util. Comm.* (1976), 48 Ohio St. 2d 163 [2 O.O.3d 342]. Accordingly, the order of the commission, being neither unreasonable nor unlawful, is affirmed.

*Order affirmed.*

CELEBREZZE, C.J., PARRINO, HOLMES and C. BROWN, JJ., concur.

W. BROWN and LOCHER, JJ., concur in judgment only.

PARRINO, J., of the Eighth Appellate District, sitting for SWEENEY, J.