UNION RURAL ELECTRIC COOPERATIVE, INC., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Union Rural Elec. Coop., Inc. *v.* Pub. Util. Comm. (1990), 52 Ohio St. 3d 78]

(No. 89-794—Submitted April 17, 1990—Decided June 20, 1990.)

*Thompson, Hine & Flory, Robert P. Mone, William R. Case* and *Thomas E. Lodge,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Anne L. Hammerstein,* for appellee.

*Faruki Gilliam & Ireland, D. Jeffrey Ireland* and *David A. Shough,* for intervening appellee Dayton Power & Light Co.

*Vorys, Sater, Seymour & Pease, Mary Ellen Fairfield, Carole A. Mitchell* and *Robert N. Webner,* for intervening appellee Honda of America Mfg., Inc.

*Per Curiam.* The primary issue in this appeal is whether the commission properly construed the phrase "electric consuming facilities" as set forth in R.C. 4933.81(E). We answer in the affirmative and affirm the order of the commission.

R.C. 4933.83(A) provides, in part:

"Except as otherwise provided in this section and Article XVIII of the Ohio Constitution, each electric supplier shall have the exclusive right to furnish electric service to all electric load centers located presently or in the future within its certified territory, and shall not furnish, make available, render, or extend its electric service for use in electric load centers located within the certified territory of another electric supplier; * * *. In the event that a new electric load center should locate in an area that is composed of two or more adjacent certified territories, the electric supplier in whose certified territory the greater portion of the land area covered by the electric load center is located shall serve that electric load center. * * *"

R.C. 4933.81(E) defines "electric load center" as:

"* * * all the electric consuming facilities of any type or character owned, occupied, controlled, or used by a person at a single location which facilities have been, are, or will be connected to and served at a metered point of delivery and to which electric service has been, is, or will be rendered."

The General Assembly did not provide a definition for "electric consuming facilities." The commission, in general, construed this phrase to mean buildings, structures, installations, or other man-made improvements that are served by electricity. Applying this

definition to the evidence adduced at hearing, the commission found that the land-area calculation should reflect the square footage of the land area covered by various buildings and structures, as well as that covered by installations and improvements including, for example, nature trails served by light poles; landscaped lawns sprinkled by electrically controlled hoist devices and valves; an asphalt crash pad at the proposed vehicle dynamics area ("VDA") to be served by electrical pumps, tracking systems, and lighting; an asphalt crash pad at the existing VDA served by a movable rail used to impact vehicles, a computer system, and a speaker system; and a salt bath, brake soak tank, and skid pad at the existing TRC facilities served by electrical pumps.

Union Rural contends that the commission defined "electric consuming facilities" too broadly, thereby overstating DP&L's portion of the land area covered by the electric load center. It maintains that the plain language of the statute and the purpose of the Certified Territory Act, which it derives from newspaper accounts and public policy declarations found in a Kansas statute establishing electric service territories, support a narrower construction, namely, "electric appliances, devices and other apparatus that actually consume electric power and energy." Consistent with its "device equals facilities" theory, Union Rural would apparently exclude from the calculation the square footage of the land area covered by the above-noted installations and improvements.

Union Rural's argument is without merit. When interpreting legislation, words used in statutes must be given their plain and ordinary meaning, unless legislative intent indicates otherwise. *Coventry Towers, Inc.* v. *Strongsville* (1985), 18 Ohio St. 3d 120,

122, 18 OBR 151, 152, 480 N.E. 2d 412, 414; see, also, R.C. 1.42. Here, neither the language of the Certified Territory Act nor the weak authorities on which Union Rural relies to divine the purpose of this Act persuade us that the General Assembly intended "electric consuming facilities" to be given other than its ordinary meaning.

Turning to the relevant inquiry, Webster's Third New International Dictionary, Unabridged (1986) 812-813, defines "facility" as "something * * * that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." A simple comparison reveals that the commission construed the pivotal word in the phrase, "facilities," in a manner that is consistent with its common meaning.

Moreover, by the General Assembly modifying "facilities" with the words "electric consuming," we do not believe that it intended to restrict the phrase to "devices" or "appliances," as urged by Union Rural. The statute speaks to "electric consuming facilities" that are "occupied" by a person. As the commission observed, "[o]bviously, one does not normally occupy an electrical device or appliance." In sum, we find the commission's construction of "electric consuming facilities," and the findings made pursuant thereto, to be appropriate in all respects.

Union Rural also contends that the commission erred by considering the existing TRC facilities to be part of the "new electric load center" for purposes of R.C. 4933.83(A). However, having determined that the commission properly construed the phrase "electric consuming facilities," we find it unnecessary to resolve this issue. Even if the square footage of the land area covered by the existing TRC

facilities is excluded from the calculation, 5,602,376 square feet of the new electric load center are in DP&L's certified territory, while only 4,316,102 square feet are in Union Rural's certified territory. Thus, under R.C. 4933.83(A), DP&L remains the electric supplier entitled to provide service.

The commission's order, finding that DP&L is the electric supplier entitled to provide service, is neither unreasonable nor unlawful and it is hereby affirmed.

*Order affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, WHITESIDE and RESNICK, JJ., concur.

ALBA L. WHITESIDE, J., of the Tenth Appellate District, sitting for H. BROWN, J.