[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaints of Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2017-Ohio-7566.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7566

IN RE COMPLAINTS OF LYCOURT-DONOVAN ET AL., APPELLANTS, *v*. COLUMBIA GAS OF OHIO, INC., INTERVENING APPELLEE; PUBLIC UTILITIES COMMISSION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaints of Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2017-Ohio-7566.]

*Public utilities—R.C. 4905.20 and 4905.21—Natural-gas provider did not abandon customers—Natural-gas provider intended to restore service to its customers when dangerous condition was remedied—R.C. 4905.22— Natural-gas provider did not provide inadequate service—Orders of Public Utilities Commission affirmed.*

(No. 2016-0080—Submitted May 17, 2017—Decided September 13, 2017.)

APPEAL from the Public Utilities Commission, Nos. 12-2877-GA-CSS, 13-124-GA-CSS, and 13-667-GA-CSS.

_____

**O'CONNOR, C.J.**

{¶ 1} This appeal is from orders issued by the Public Utilities Commission of Ohio ("PUCO"). Appellants, Katherine Lycourt-Donovan, Seneca Builders, L.L.C., and Ryan Roth are owners of residential property in the Toledo area who filed complaints against intervening appellee, Columbia Gas of Ohio, Inc., after it discontinued natural-gas service to their properties. Columbia Gas discontinued service upon discovering "stray gas"[1] near the homes.

{¶ 2} Natural gas occurs underground and can migrate into the basement of a home through cracks in the foundation, drain lines, sewer lines, or other conduits. If stray gas migrates into a confined area in sufficient concentrations, it can cause a flash fire or explosion when it makes contact with an ignition source. It is undisputed that Columbia Gas's system is not the source of the stray gas found near the homes owned by appellants and that Columbia Gas has no responsibility to remediate the stray gas.

{¶ 3} The PUCO found that the presence of stray gas near the appellants' properties created a verifiable safety hazard that justified Columbia Gas's discontinuing gas service to the homes.

{¶ 4} In their appeal from that order, the property owners assert two propositions of law. They claim that Columbia Gas unlawfully abandoned service and furnished inadequate service. Both claims lack merit. Although we are sympathetic to the property owners' plight, we are not persuaded that Ohio's laws are intended to fault a utility for taking reasonable steps to protect the safety of its customers and others who live near those customers. We therefore affirm the PUCO's orders.

---

[1] "Stray gas" is a term Columbia Gas uses to describe natural gas of an unknown source that is not from its facilities.

## I.  RELEVANT BACKGROUND

### A.  Stray gas is discovered at Oakside Road and Columbia Gas discontinues service

{¶ 5} On May 24, 2012, the owner of a home on Oakside Road in Toledo called Columbia Gas to report the presence of dead vegetation in her yard.  Dead vegetation can indicate a natural-gas leak.  Columbia Gas conducted testing at the house, which confirmed the presence of a 3 percent concentration of natural gas at the home's foundation.  A natural-gas-in-air mixture in concentrations of 4 to 14 percent can be flammable, so Columbia Gas discontinued natural-gas service to the home while it attempted to determine the nature and source of the stray gas. Columbia Gas performed additional testing on May 25, 2012, to determine whether the house lines and service lines were leaking, but testing by a third-party lab showed that the natural-gas sample taken from the homeowner's yard did not match the natural gas in Columbia Gas's lines.

{¶ 6} On May 29, 2012, the homeowner called Columbia Gas again, this time to report an odor inside her home that she thought might be natural gas. Testing performed that day showed the presence of natural gas in the basement. During a follow-up inspection on May 31, 2012, Columbia Gas detected stray gas near the foundations of 13 homes on Oakside Road, which prompted it to interrupt service to those homes.  Based on the follow-up inspection, and a supplemental leak survey performed a few weeks later, Columbia Gas concluded that the stray-gas problem was limited to Oakside Road.

### B.  Columbia Gas communicates with the customers of Oakside Road and conducts more tests

{¶ 7} On the day of the follow-up inspection, Columbia Gas's manager of communications and community relations, Chris Kozak, and its operations-center manager for the Toledo area, Curtis Anstead, went door-to-door to speak with Oakside Road residents about the stray-gas issue.  For those not home, Columbia

Gas left a letter on the door explaining that it was stopping natural-gas service for safety reasons. The letter explained that Columbia Gas would restore service once the issue was resolved.

{¶ 8} On June 11, 2012, Kozak met with several Oakside Road residents to discuss the situation. The residents presented Kozak with a list of 33 questions, which Columbia Gas answered the next day. The answers described how Columbia Gas had detected natural gas in the soil, why service had been interrupted, and what could be done to reestablish service.

{¶ 9} On June 15, 2012, Columbia Gas sent another letter to the residents of Oakside Road in which it reiterated the reasons that it had interrupted service and stated that service would be restored once there was a clear indication that no safety concerns were present. Attached to each letter was (1) a diagram showing the locations and results of testing performed at each house the day before, (2) a form for the governmental authority having jurisdiction over the stray-gas issue to sign, assuring that a remediation system had been installed that made it safe for Columbia Gas to restore service and consenting to the restoration of service by Columbia Gas, and (3) a consent form for the property owner to sign, which likewise assured that a remediation system had been installed that made it safe for Columbia Gas to restore service. The diagrams showed that on June 14, 2012, Columbia Gas obtained high readings of 9 percent around the foundation of Lycourt-Donovan's home, 8 percent around the foundation of Ryan Roth's rental property, which is operated and maintained by appellant R&P Investments, Inc., and 8 percent around the foundation of the home owned by Seneca Builders. The detected concentrations were all within the flammability range of a natural-gas-in-air mixture.

{¶ 10} On June 28, 2012, Columbia Gas again tested around the foundations of the Lycourt-Donovan, Roth, and Seneca homes and obtained high

readings of 4 percent, 11 percent, and 3 percent, respectively. Another home tested that day registered a high reading of 16 percent.

{¶ 11} By September 25, 2012, the stray gas was dissipating. That day, Columbia Gas obtained high readings around the foundations of the Lycourt-Donovan, Roth, and Seneca Builders homes of 0 percent, 4 percent, and 1.5 percent, respectively.

## C. Columbia Gas removes customer accounts, disconnects the line serving Oakside Road, and offers to meet again with the residents

{¶ 12} On August 23, 2012, Columbia Gas sent letters advising appellants that their accounts were being removed from Columbia Gas's system. The letters also stated, "Once the stray gas situation has been abated, and consent has been given that conditions are safe, we look forward to restoring the natural gas service to your home."

{¶ 13} On the same day, Columbia Gas conducted pressure testing on its system to determine whether there were any leaks. The results of the pressure test showed that none of the lines were leaking. Field notes from the pressure test show that Columbia Gas recorded the main line serving Oakside Road as "retired."

{¶ 14} Kozak had further communications with Lycourt-Donovan and other residents, including explaining that it was declining to reestablish service, given the test results obtained a few months earlier. In a letter to Lycourt-Donovan, Columbia Gas again explained that to reestablish service, a customer must (1) install a remediation system, (2) obtain from a governmental authority having jurisdiction over the stray-gas issue written assurance that it is safe to restore service and consent to the restoration of service, and (3) obtain written consent from the property owner.

### D. Columbia Gas communicates with state and local entities

{¶ 15} During the time that Columbia Gas was communicating with the property owners, it was also communicating with state and local entities about the stray-gas problem on Oakside Road.

{¶ 16} In May 2012, Columbia Gas notified the Toledo Fire Department, Toledo Environmental Services, the Ohio Environmental Protection Agency ("Ohio EPA"), and the PUCO of the problem. That same month, Columbia Gas was joined by members of the Toledo Fire Department and the Ohio EPA in investigating the extent and possible source of the stray gas.

{¶ 17} In June 2012, Columbia Gas participated in a conference call with the Toledo Fire Department, Toledo Environmental Services, the Ohio EPA, and the PUCO to discuss the stray-gas situation. Also that month, Toledo's deputy mayor asked Columbia Gas to have a representative appear before city council to address the situation, which it did.

{¶ 18} In July and October 2012, Columbia Gas representatives met with the PUCO to further discuss the issue. And Columbia Gas also corresponded with a state representative's office in October 2012. None of these entities, however, challenged Columbia Gas's actions.

### E. Proceedings before the PUCO

{¶ 19} Lycourt-Donovan, Seneca, and Roth (jointly with R&P Investments, Inc.) filed complaints with the PUCO asserting that Columbia Gas had committed numerous violations in discontinuing their natural-gas service. The PUCO consolidated the complaints and held a three-day hearing to address the claims. The PUCO ruled that the property owners had failed to sustain their burden of proof, and it decided the matter in favor of Columbia Gas. Specifically, the PUCO determined that Columbia Gas (1) had not violated the complaint-handling procedures established by Ohio Adm.Code 4901:1-13-10, (2) had not violated R.C. 4905.22's prohibition against rendering inadequate service, (3) had not violated

R.C. 4905.35's proscription against providing discriminatory service, and (4) had not abandoned service in violation of R.C. 4905.20 and 4905.21.

{¶ 20} The PUCO did, however, find that Columbia Gas had acted unreasonably in failing to articulate a standard that had to be met before it would reestablish service. The PUCO thus set the reconnection standard at a 4 percent concentration of natural-gas-in-air mixture and directed Columbia Gas to "provide the parameters on where and when the measurements must be taken to meet this standard and to restore service." Although the PUCO declared that Columbia Gas had acted unreasonably in articulating its reconnection standard, the PUCO observed that this alone did not constitute inadequate service.

{¶ 21} All parties sought rehearing of the PUCO's order. The PUCO denied the multiple grounds for rehearing asserted by the property owners, but granted Columbia Gas's request to set the reconnection standard at a 0 percent concentration of natural gas in air. In setting this more stringent standard, the PUCO recognized that this standard would place a hardship on the property owners, but stated, "[O]n balance, we choose the safety of the residents of [Oakside Road] as paramount in this matter."

{¶ 22} This appeal by the property owners followed.

## II. STANDARD OF REVIEW

{¶ 23} R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable. We will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the PUCO's determination is

against the manifest weight of the evidence or is clearly unsupported by the record. *Id.*

{¶ 24} Although this court has "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on the expertise of a state agency in interpreting a law when "highly specialized issues" are involved and when "agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly," *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

### III. DISCUSSION

### A. The property owners' first proposition of law

{¶ 25} The property owners contend that the PUCO misinterpreted R.C. 4905.20 and 4905.21 by permitting Columbia Gas to withdraw natural-gas service without filing an abandonment application. Before addressing this contention, however, we must first determine whether the property owners forfeited it by failing to raise it below.

### 1. *The property owners' abandonment argument is properly before the court*

{¶ 26} Columbia Gas asserts that the property owners forfeited their abandonment argument by not timely raising it before the PUCO. This assertion is without merit. The PUCO found that the issue of unlawful abandonment was clearly set forth in the complaints filed by Seneca Builders and Roth and was implied in the complaint by Ms. Lycourt-Donovan, and it further found that the issue had been contested at the hearing. Pub. Util. Comm. Nos. 12-2877GA-CSS, 13-124-GA-CSS, and 13-667-GA-CSS, 2015 Ohio PUC LEXIS 39, at *6-7 (Jan. 14, 2015). The record supports this finding. Roth's complaint alleged that Columbia Gas had "effectively abandoned the service to [his property] in violation of Ohio law." The appendix to Lycourt-Donovan's complaint alleged that

Columbia Gas had "abandoned the neighborhood." And Seneca's complaint alleged that Columbia Gas had "ceased" to provide service. Even if Seneca did not use the optimal term of art to describe its grievance, Columbia Gas cannot claim that it lacked notice. Moreover, the briefs submitted to the PUCO contained a thorough discussion of the issue. Thus, the issue was timely raised.

### 2. The Miller Act does not apply to Columbia Gas's actions

{¶ 27} The property owners' abandonment argument is based on the Miller Act, R.C. 4905.20 and 4905.21. R.C. 4905.20 provides:

> [N]o public utility * * * furnishing service or facilities within this state, shall abandon or be required to abandon or withdraw any * * * main pipe line [or] gas line * * * or any portion thereof * * * or the service rendered thereby that has once been * * * used for public business, nor shall any such facility be closed for traffic or service * * * except as provided in section 4905.21 of the Revised Code.

And R.C. 4905.21 provides:

> [A]ny public utility * * * desiring to abandon or close, or have abandoned, withdrawn, or closed for traffic or service all or any part of any line * * * referred to in section 4905.20 of the Revised Code, shall make application to the public utilities commission in writing. The commission shall thereupon cause reasonable notice of the application to be given, stating the time and place fixed by the commission for the hearing of the application.

**{¶ 28}** These provisions "protect[] existing utility customers from having their service terminated without commission approval." *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996). Under the act, the mere "whims of a public utility" cannot justify the termination of service. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 109, 671 N.E.2d 241 (1996).

**{¶ 29}** The Miller Act does not define the word "abandon." In the absence of a controlling definition, we construe the word according to the rules of grammar and common usage, paying heed to any technical or particular meaning it has acquired. R.C. 1.42. *See also Union Rural Elec. Coop., Inc. v. Pub. Util. Comm.*, 52 Ohio St.3d 78, 80, 555 N.E.2d 641 (1990). Various sources agree on the meaning of "abandon." By rule, the PUCO has defined "abandoned" pipe as "pipe that was not intended to be used again for supplying of gas or natural gas, including a deserted pipe that is closed off to future use." Ohio Adm.Code 4901:1-13-05(A)(3)(d). We have defined "abandon" as " '[t]o relinquish or give up with intent of never again resuming one's right or interest. * * * To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert.' " (Ellipsis sic.) *Fulmer v. Insura Property & Cas. Co.*, 94 Ohio St.3d 85, 95, 760 N.E.2d 392 (2002), quoting *Black's Law Dictionary* 2 (6th Ed.1990). Webster's Third New International Dictionary defines "abandon" as "to cease to assert or exercise an interest, right, or title to esp. with the intent of never again resuming or reasserting it." *Id.* at 2 (2002).

**{¶ 30}** Taking these definitions together, it is plain that in order to abandon, there must be a relinquishment coupled with an intent to never again assert a right or interest. Columbia Gas's actions clearly do not fit within the meaning of "abandon."

**{¶ 31}** The PUCO made a factual determination that Columbia Gas intended to continue to serve the property owners after remedial measures were completed. Record evidence supports this finding. Columbia Gas's manager of

communications and community relations testified, "[throughout] the entire course of this process our desire was to have [the property owners] have their natural gas service restored." In written correspondence dated May 31, 2012, June 15, 2012, and August 23, 2012, Columbia Gas repeatedly affirmed its intention to restore service once the stray-gas issue was remedied. Columbia Gas's Toledo-area operations-center manager explained that even though the line that provided service to the property owners had been disconnected from the rest of Columbia Gas's system, it could be "tied back in at any time."

{¶ 32} Moreover, the PUCO's order emphasized that Columbia Gas maintained an obligation to provide service once the property owners remedied the situation. Columbia Gas's intention to restore service, coupled with its continuing obligation to provide service upon remediation, negates the property owners' assertion that Columbia Gas abandoned service and was required to file an abandonment application.

{¶ 33} Indeed, R.C. 4905.21 speaks of a utility "desiring" to abandon. It is clear from the record that Columbia Gas did not desire to abandon service to the property owners. All else equal, there seems to be no economic benefit for a utility to stop serving numerous customers. And the PUCO did not find that Columbia Gas's actions were financially motivated. The mere "whims of a public utility" did not deprive the property owners of their natural-gas service, *Grafton*, 77 Ohio St.3d at 109, 671 N.E.2d 241; rather, the culprit was a hazardous condition unassociated with Columbia Gas's system. This set of circumstances does not put Columbia Gas's actions within the scope of the Miller Act.

{¶ 34} The property owners challenge the PUCO's factual determinations, pointing to other evidence in the record that they believe shows that Columbia Gas abandoned service. For example, they cite Columbia Gas's disconnection of the main line serving Oakside Road, Columbia Gas's removal of the customers' accounts from its system, and e-mails among Columbia Gas personnel regarding

whether to pursue abandonment if the stray-gas problem could not be fixed. But in making this argument, the property owners are essentially asking us to overturn the PUCO's factual finding that Columbia Gas intended to restore service once remedial measures were complete.

{¶ 35} Our function on appeal is not to reweigh the evidence or second-guess the PUCO on questions of fact. *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 114 Ohio St.3d 340, 2007-Ohio-4276, 872 N.E.2d 269, ¶ 29. Mindful of our role, it suffices that probative evidence in the record supports the PUCO's finding that Columbia Gas intended to reestablish service to the property owners upon the completion of remedial measures. *Luntz Corp. v. Pub. Util. Comm.*, 79 Ohio St.3d 509, 511, 684 N.E.2d 43 (1997) (We will not "reweigh evidence or substitute our judgment for that of the commission on factual questions where there is sufficient probative evidence in the record to show that the commission's decision is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty").

{¶ 36} The interests of safety underscore the problems with the home owners' interpretation of the Miller Act. The PUCO's "broad" authority to act in the interest of safety is well established. *Akron v. Pub. Util. Comm.*, 149 Ohio St. 347, 359, 78 N.E.2d 890 (1948). And we have previously noted the potential hazards involving natural gas: "[N]atural gas is dangerous unless it is handled properly. It is noxious, flammable, invisible, and naturally odorless. Natural gas is potentially lethal to persons and destructive of property. We have long recognized its dangers." *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 14 (collecting cases).

{¶ 37} This case involves the verifiable safety hazard of stray gas from an unknown source present around the foundations of the homes at issue. Fortunately,

the stray gas at the Oakside Road properties did not result in a tragedy. But other communities have not been so lucky.

**{¶ 38}** A March 21, 2015 explosion caused by a release of natural gas in Upper Arlington serves as a powerful reminder that situations like the one presented here should be taken very seriously. A PUCO staff report on that incident found that a natural-gas release caused a home to explode.[2] And a newspaper reported that the explosion was felt and heard "as far as a mile away," the home was reduced to a "few sticks of wood" and a partial chimney column, "[d]ebris rained down," "[f]lames shot into the air," and "[a]s many as 30 houses may have been damaged."[3]

**{¶ 39}** Given the fluid nature of the situation and the threats posed to people, animals, and property under the facts presented here, we cannot endorse a reading of the Miller Act that faults a utility for taking reasonable steps to protect the safety interests of its customers. We agree with the PUCO that the General Assembly could not have intended the result urged by the property owners, which would subordinate safety to the convenience of the property owner.

**{¶ 40}** The PUCO and Columbia Gas also persuasively argue that Columbia Gas's actions fell within other safety-related provisions in the law. Under R.C. 4933.122(A) and (B), "[n]o natural gas, gas, or electric light company shall terminate service, *except for safety reasons * * ** at any time to a residential consumer, except pursuant to procedures that provide for" such things as reasonable prior notice and a reasonable opportunity to dispute the service termination.

---

[2] Staff of the Public Utilities Commission of Ohio, *In re the Investigation of Columbia Gas of Ohio Relative to its Compliance with the Natural Gas Pipeline Safety Standards and Related Matters* at 1, Case No. 15-1351-GA-GPS (Aug. 28, 2015), https://dis.puc.state.oh.us/TiffToPDf/A1001001A15H28B42038H04086.pdf (accessed Aug. 15, 2017).

[3] The Columbus Dispatch, *House Explodes in Upper Arlington* (Mar. 22, 2015), http://www.dispatch.com/content/stories/local/2015/03/21/House_explosion.html (accessed Aug. 15, 2017).

(Emphasis added.)   And under Ohio Adm.Code 4901:1-18-03(D), a natural-gas utility may discontinue service to residential customers

> [w]hen supplying * * * natural gas creates a safety hazard to consumers or their premises [or] the public * * * or where, because of conditions beyond the consumer's premises, disconnection of the supply of * * * natural gas is reasonably necessary.  The company shall not restore service until the hazardous condition(s) has been corrected.

**{¶ 41}** Here, the PUCO determined, "The evidence of record reveals that the levels of methane gas recorded around the foundations of [the property owners'] residential dwellings, albeit varying from time to time, represents a verifiable safety hazard that warrants the interruption of natural gas service until such time as remediation occurs."  This hazard posed a threat, at the very least, to the residents of Oakside Road.  The property owners offer no argument to dispute that the conditions satisfied the elements of the statute and the rule.

### B.  The property owners' second proposition of law

**{¶ 42}** In their second proposition of law, the property owners argue that the PUCO erred in determining that Columbia Gas did not violate R.C. 4905.22's prohibition against furnishing inadequate service.  As with the first proposition of law, before addressing the merits of this argument, we must decide whether we have jurisdiction to consider it.

### 1.  The property owners' inadequate-service argument
### is properly before the court

**{¶ 43}** R.C. 4905.22 provides that "[e]very public utility shall furnish necessary and adequate service and facilities, and every public utility shall furnish and provide with respect to its business such instrumentalities and facilities, as are

adequate and in all respects just and reasonable." The property owners assert in their notice of appeal that PUCO violated the "just and reasonable" standard set forth in R.C. 4905.22. The property owners' second proposition of law, however, alleges that PUCO erred in failing to find that Columbia Gas furnished "inadequate service" in violation of R.C. 4905.22. In Columbia Gas's view, even though the property owners cited R.C. 4905.22 in both their notice of appeal and their second proposition of law, the property owners' shift in phraseology—from "just and reasonable" to "inadequate service"—created a different argument entirely, barring the court's consideration of it. We are unconvinced.

**{¶ 44}** R.C. 4903.13 provides that the procedure for challenging a PUCO order is through a notice of appeal "setting forth the order appealed from and the errors complained of." The assignments of error enumerated in a notice of appeal "delimit the issues" for the court's consideration. *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶ 21. A claim not set forth in the notice of appeal deprives the court of jurisdiction to consider it. *In re Complaint of Smith v. Ohio Edison Co.*, 137 Ohio St.3d 7, 2013-Ohio-4070, 996 N.E.2d 927, ¶ 28.

**{¶ 45}** The parties cite no authority that addresses the precise level of detail R.C. 4903.13 requires in a notice of appeal. Instructive, however, is our precedent on R.C. 5717.04, which governs appeals from the Board of Tax Appeals to this court (as well as to the courts of appeals). The relevant text of R.C. 5717.04, which is almost identical to R.C. 4903.13, provides that "[a] notice of appeal shall set forth the decision of the board appealed from and the errors therein complained of." Hypertechnical jurisdictional objections are disfavored under R.C. 5717.04. *Cruz v. Testa*, 144 Ohio St.3d 221, 2015-Ohio-3292, 41 N.E.3d 1213, ¶ 21. The sufficiency of a notice of appeal is judged not merely by the form of the words used but also their context. *Id.*

{¶ 46} The circumstances do not support Columbia Gas's view that the shift in phraseology from the property owners' notice of appeal to their second proposition of law deprives us of jurisdiction to consider the issue of inadequate service. In the proceedings below, (1) the PUCO addressed the inadequate-service claim in its January 14, 2015 order, (2) the property owners' rehearing applications articulated an inadequate-service claim, (3) Columbia Gas responded to this claim in its memorandum contra on rehearing, and (4) the PUCO addressed the claim on rehearing. Viewed in this light, the property owners' notice of appeal suffices to put the court, Columbia Gas, and the PUCO on notice as to the inadequate-service dispute. We now proceed to consider the merits.

### 2. *The property owners have not established a violation of R.C. 4905.22*

{¶ 47} The property owners first assert that the PUCO erred when it ruled that Columbia Gas did not violate the proscription in R.C. 4905.22 against inadequate service because, according to the property owners, unauthorized abandonment equates to inadequate service.

{¶ 48} Even assuming, without deciding, that an unauthorized abandonment of service equates to the provision of inadequate service, the property owners' argument fails because, as discussed above, the PUCO correctly concluded that Columbia Gas did not effect an unauthorized abandonment of service.

{¶ 49} The property owners next rely on the PUCO's statement that Columbia Gas acted unreasonably in communicating its reconnection standard to support the argument that Columbia Gas had furnished inadequate service. In its order, the PUCO found that Columbia Gas had not provided inadequate service, even though the PUCO found that Columbia Gas had acted "unreasonably" in its "unwillingness to articulate a standard that must be met before reconnecti[ng] * * * service" to the Oakside Road residents. 2015 Ohio PUC LEXIS 39, at *39 (Jan. 14, 2015). In support of its conclusion that Columbia Gas had acted unreasonably, the PUCO observed, "Columbia has failed to provide any

16

information as to the level and duration of such level that the residents must meet in order for the Company to consider the situation resolved so as to enable the restitution of natural gas service." *Id.* at *38-39.

{¶ 50} On the surface, there is a logical appeal to the property owners' argument that Columbia Gas furnished inadequate service: if a utility behaves unreasonably in its dealings with customers, it follows that such unreasonable conduct might equate to the provision of inadequate service. But the property owners do not move past this perfunctory level of analysis. They cite no authority for their proposition and do not establish that Columbia Gas's actions constitute a violation of R.C. 4905.22. This alone is reason to reject their argument. *In re Complaint of Toliver v. Vectren Energy Delivery of Ohio, Inc.*, 145 Ohio St.3d 346, 2015-Ohio-5055, 49 N.E.3d 1240, ¶ 30 (explaining that an undeveloped legal argument does not establish reversible error).

{¶ 51} Another problem is that the property owners misconstrue what the PUCO did in its order. In analyzing whether Columbia Gas furnished inadequate service, the PUCO looked at several factors: "the number, severity, and duration of the service problems; whether the service could have been corrected; and whether the service problems likely are caused by the company's facilities." 2015 Ohio PUC LEXIS 39, at *36 (Jan. 14, 2015). Applying these factors, the PUCO determined that Columbia Gas did not furnish inadequate service. True, the PUCO ruled that Columbia Gas had acted unreasonably in communicating its reconnection standard. But the PUCO ruled that "[t]his one factor alone, when considered with all the other facts and circumstances in this case, do[es] not rise to the level of legally inadequate service as contemplated by R.C. 4905.22." 2015 Ohio PUC LEXIS 993, at *8. The property owners do not challenge the factors that the PUCO took into account, nor do they allege that the PUCO misapplied the factors. The property owners' failure to challenge the PUCO's findings defeats the argument

that Columbia Gas violated R.C. 4905.22. *In re Comm. Rev. of Capacity Charges of Ohio Power Co.*, 147 Ohio St.3d 59, 2016-Ohio-1607, 60 N.E.3d 1221, ¶ 47.

### C. The property owners' remaining arguments cannot be considered

{¶ 52} The property owners make two additional arguments, but neither is properly before us. First, they insist that the PUCO's order has the effect of flipping the burden of proof from the utility to the customer. In the property owners' view, this controversy should have been litigated through an abandonment proceeding, a proceeding at which the utility has the burden of proof. R.C. 4905.21. Because Columbia Gas did not file an abandonment application, the property owners aver, they were left with no other choice than to file a complaint under R.C. 4905.26, which in turn required them to shoulder the burden of proof. But this argument was not asserted in an application for rehearing,[4] and thus we lack jurisdiction under R.C. 4903.10 to address it. *In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 54. Further, even if the argument were properly before us, it would fail. We have established that Columbia Gas did not intend to abandon service to the property owners, therefore it had no obligation to file an abandonment application. Because this case is properly a complaint proceeding, the PUCO correctly placed the burden of proof on the complainants, the property owners. *See Grossman v. Pub. Util. Comm.*, 5 Ohio St.2d 189, 190, 214 N.E.2d 666 (1966).

{¶ 53} Second, the property owners maintain that the PUCO established a reconnection standard that is impossible to meet. The PUCO's initial order stated that the standard for reconnection should be a 4 percent natural-gas-in-air mixture. But on rehearing, the PUCO modified this to 0 percent. The property owners have

---

[4] During the proceedings below, a few of the property owners asserted on rehearing that the PUCO erred in ruling that they had failed to meet their burden of proof. But the argument presented here is a separate issue involving not whether the property owners had met their burden of proof but whether Columbia Gas should have had the burden of proof.

18

forfeited any challenge to this latter standard because they did not challenge it in a second rehearing application. *See In re Application of Columbus S. Power Co.*, 147 Ohio St.3d 439, 2016-Ohio-1608, 67 N.E.3d 734, ¶ 56.

### IV. CONCLUSION

**{¶ 54}** Because the property owners have not shown that the PUCO erred, we affirm.

Orders affirmed.

O'DONNELL, KENNEDY, FRENCH, O'NEILL, and FISCHER, JJ., concur.

DEWINE, J., concurs in judgment only.

_____

The Law Office of Robert Dove and Robert Dove, for appellants.

Michael DeWine, Attorney General, and William L. Wright, Robert Eubanks, and Thomas McNamee, Assistant Attorneys General, for appellee.

Porter Wright Morris & Arthur, L.L.P., Eric B. Gallon, and L. Bradfield Hughes; and Stephen B. Seiple and Brooke E. Leslie, for intervening appellee.

_____