[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Harris Design Servs. v. Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2018-Ohio-2395.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2395

IN RE COMPLAINT OF HARRIS DESIGN SERVICES, APPELLANT, *v*. COLUMBIA GAS OF OHIO, INC., INTERVENING APPELLEE; PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Harris Design Servs. v. Columbia Gas of Ohio, Inc.*, Slip Opinion No. 2018-Ohio-2395.]

*Public utilities—R.C. 4905.22—Utility provided adequate notice of disconnection—Orders of Public Utilities Commission affirmed.*

(No. 2017-0436—Submitted April 10, 2018—Decided June 28, 2018.)

APPEAL from the Public Utilities Commission, No. 15-405-GA-CSS.

_____

**DEWINE, J.**

{¶ 1} A public-utility company claims that it gave its customer adequate notice that natural-gas service to the customer's property had been disconnected by hanging two notices on the front door of the property. The customer, who was not occupying the property, did not discover the notices and thus did not realize that the gas had been disconnected until the pipes froze and burst, causing damage.

Whether the utility company furnished adequate notice of the service disconnection is the main question in this appeal from orders of the Public Utilities Commission of Ohio ("PUCO"). We conclude that the utility did provide adequate notice through the door tags, and we affirm the orders.

## BACKGROUND

**{¶ 2}** Columbia Gas of Ohio, Inc. ("Columbia") supplied natural-gas service to a property in Columbus ("the property") that was leased to Harris Design Services ("HDS"), an architectural-design firm. In November 2007, the firm physically vacated the property but continued to lease and maintain it.

**{¶ 3}** In February 2014, Bruce Harris, the owner and president of HDS, discovered that the building had sustained damage as a result of water pipes that had burst due to freezing temperatures. The pipes had frozen because, unbeknownst to HDS, Columbia had disconnected gas service to the property. HDS eventually filed a complaint, alleging that Columbia had failed to give proper notice of the disconnection, in violation of R.C. 4905.22, which requires utilities to provide "necessary and adequate service."

**{¶ 4}** The PUCO held a hearing on the complaint. The evidence established that service to HDS's building had been disconnected in September 2013 after a cable company hit a gas line near the property. Ryder Long, a Columbia service technician, was sent to repair the line. After making the repairs, Long reestablished service to the meter, but he left the meter valve off and locked it so that no gas would go into the structure until service was reestablished. He knocked on the front door to speak with someone about restoring service to the building, but no one answered. Long testified that he had prepared a tag to hang on the door to notify the customer to call Columbia to reestablish service but saw that he did not need to leave the tag, because there was already a yellow Columbia tag on the door. He believed that the yellow tag had been placed on the door by a different technician who had been there earlier in the day.

{¶ 5} In November 2013, Long was called back to the property because the gas line had been hit a second time. After making repairs, Long checked the meter valve and saw that it was still off and locked. Once again, he knocked on the door and no one answered. Long testified that he saw the yellow door tag still hanging on the door from the September incident and that this time, he placed an orange tag on top of the yellow tag.

{¶ 6} In its posthearing brief, HDS challenged the credibility of Long's testimony about the door tags. It noted that three individuals had testified that they had visited the property on behalf of HDS during the relevant time period and none of them had stated that he or she had seen a tag on the door. Janet Harris, Bruce's wife and the office manager for HDS, said that she had driven by the property on a monthly basis. Bruce Harris testified that he had been in the building in December 2013 (when everything was fine) and again in February 2014 (when he discovered the damage). And a landscaper who mowed the lawn through November 2013 testified that he did not remember seeing anything on the door.

{¶ 7} HDS further argued that even if door tags had been hung on the door, they would not constitute sufficient notice. In addition to door tags, HDS maintained, Columbia should have sent letters and made telephone calls to HDS.

{¶ 8} Crediting Long's testimony, the PUCO found that Columbia had placed the tags on the door. It further concluded that hanging a notice on a door to a property constitutes adequate notice of disconnection after an emergency repair. Thus, it determined that HDS had failed to establish that Columbia had acted improperly.

{¶ 9} HDS filed a rehearing application alleging errors in the PUCO's decision. The PUCO's first rehearing entry granted HDS's rehearing application "for the limited purpose of further consideration of the matters specified in the application for rehearing." Pub. Util. Comm. No. 15-405-GA-CSS, ¶ 1 (July 20, 2016). The PUCO later issued a second rehearing entry in which it substantively

rejected the alleged errors assigned by HDS and denied HDS's rehearing application. HDS then filed this appeal.

## DISCUSSION

{¶ 10} HDS presents six propositions of law on appeal. For ease of discussion, we divide these propositions into three topics: (1) door tags—whether Columbia hung them on the property's front door and, if so, whether that constituted adequate notice, (2) the PUCO's actions related to its rehearing process, and (3) evidentiary decisions made by the PUCO attorney examiner at the initial hearing.

*Door-Tag Issues*

{¶ 11} HDS first challenges the PUCO's determination that Columbia provided adequate notice of the disconnection by hanging tags on the property's front door. HDS challenges the PUCO's finding that door tags were placed on the door, arguing that that finding was based on evidence that was uncorroborated, lacking in detail, and not credible. It also asserts that even if door tags were hung on the door, they did not provide adequate notice and Columbia should have done more to alert HDS about the disconnection.

{¶ 12} As to the PUCO's factual finding that door tags were hung on the door, the result is dictated largely by our standard of review. We will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the PUCO's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29.

{¶ 13} There was no direct evidence contradicting Long's testimony about the door tags. HDS suggests that it is implausible that Long could remember the details of his visits nearly two years later. But the PUCO believed Long's

testimony, noting that he remembered "explicit details" from his visits, namely, his having seen the same yellow tag hanging from the door in September 2013 and November 2013. Pub. Util. Comm. No. 15-405-GA-CSS, ¶ 13 (May 25, 2016). HDS points to the testimony of the three witnesses who did not mention seeing the door tags. But there was no evidence that any of these witnesses had actually approached the front door of the building. Although Mr. Harris entered the property, there was no evidence presented to establish that he went in through the front door.

{¶ 14} We defer to the PUCO's credibility determinations in its role as finder of fact. *See Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, 152 Ohio St.3d 73, 2017-Ohio-7566, 93 N.E.3d 902, ¶ 35. The PUCO received evidence, weighed that evidence, and determined that two tags had been hung on the property's front door. Because there is sufficient probative evidence in the record to support the PUCO's findings, we conclude that HDS has not carried its burden to justify reversal of those findings. *Monongahela Power Co.* at ¶ 29.

{¶ 15} We turn next to HDS's contention that even if tags were placed on the door, they did not constitute adequate notice. The PUCO determined that Columbia complied with R.C. 4905.22, which provides that "[e]very public utility shall furnish necessary and adequate service and facilities, and every public utility shall furnish and provide with respect to its business such instrumentalities and facilities, as are adequate and in all respects just and reasonable." In doing so, the PUCO concluded that "placing a notice on the door is adequate notice of a disconnection after an emergency repair and that [Columbia] complied with all standards and regulations." Pub. Util. Comm. No. 15-405-GA-CSS, at ¶ 14.

{¶ 16} In holding that the door-tag notice was adequate, the PUCO relied on its adoption of federal gas-pipeline safety standards in Ohio Adm.Code 4901:1-16-03(A). These standards require a utility to comply with its own internal standards. Columbia's internal standards required a technician to leave a tag on the

door when gas must be shut off and no one answers the door. In addition, the PUCO cited administrative regulations that provide that attaching written notice in a conspicuous location on the premises is required when gas service is disconnected for reasons other than safety. Ohio Adm.Code 4901:1-13-09(B)(2) (disconnection for tampering or unauthorized reconnection) and 4901:1-18-06(A)(2) (disconnection for nonpayment).

{¶ 17} HDS's merit brief almost completely ignores the PUCO's legal rationale for concluding that Columbia's actions were adequate. It does not cite, let alone analyze, the administrative-code provisions that formed the primary basis for the PUCO's determination. The one rule that HDS does analyze, Ohio Adm.Code. 4901:1-13-02, was not relied on by the PUCO. Only in its reply brief does HDS try to mount a substantive challenge to the legal rationale set forth in the PUCO decision. The waiver doctrine, however, forecloses our consideration of arguments first raised on reply. *In re Application of Am. Transm. Sys., Inc.*, 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 35.

{¶ 18} The thrust of HDS's argument in its merit brief is that the door-tag notice was not adequate, because Columbia could have provided better notice—for example, through a telephone call or a letter. But HDS fails to tether this proposition to any legal requirement. And the question is not whether another type of notice might have been more likely to provide actual notice to the customer but whether the door-tag notice comported with the requirement that Columbia "furnish necessary and adequate service," R.C. 4905.22. We find nothing "unlawful or unreasonable" in the PUCO's determination that the door-tag notice was adequate, and therefore, we will not disturb its holding in this regard. *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50.

*The Rehearing Process*

{¶ 19} HDS next asserts that because the PUCO granted HDS's rehearing application, the agency was required by statute to grant HDS a "live, in-person, rehearing."  HDS further contends that the failure to hold such a hearing violated its procedural-due-process rights.  HDS also argues that it was not given proper notice of how the PUCO's rehearing process would unfold.  Before we can get to these arguments, we must address Columbia's and the PUCO's contention that the issues are not properly before this court.

{¶ 20} R.C. 4903.10 provides that an application for rehearing "shall be in writing and shall set forth specifically the ground or grounds on which the applicant considers the order to be unreasonable or unlawful.  No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in the application."  We have "long held that setting forth specific grounds for rehearing is a jurisdictional prerequisite for our review."  *In re Complaint of Cameron Creek Apts. v. Columbia Gas of Ohio, Inc.*, 136 Ohio St.3d 333, 2013-Ohio-3705, 995 N.E.2d 1160, ¶ 23.  Thus, "when an appellant's grounds for rehearing fail to specifically allege in what respect the PUCO's order was unreasonable or unlawful, the requirements of R.C. 4903.10 have not been met." *Discount Cellular, Inc. v. Pub. Util. Comm.*, 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 59.  We strictly enforce R.C. 4903.10's requirements.  *Id.*

{¶ 21} In this case, HDS's rehearing application alleged three errors.  HDS asserted that the PUCO erred in finding that HDS had not met its burden of proof, in determining that the door tags constituted adequate notice of the disconnection, and in making certain evidentiary findings.  The PUCO issued a first rehearing entry granting HDS's rehearing application for the purpose of further considering those alleged errors, but upon review of HDS's arguments, it denied the application in a second rehearing entry.

**{¶ 22}** In contrast to HDS's rehearing application, HDS's proposition of law Nos. Two through Five assert (or depend on the assertion) that the PUCO was required to hold a live, in-person hearing during the rehearing phase after conditionally granting HDS's rehearing application. Because these propositions were not presented below for the PUCO's consideration, Columbia and the PUCO argue, we do not have jurisdiction over them.

**{¶ 23}** HDS rejoins that because these propositions all fault the PUCO for actions that the PUCO took *after* HDS filed its rehearing application, it could not have included these issues in its rehearing application. But once the PUCO issued its second rehearing entry, HDS should have filed a second rehearing application that asserted the rehearing-related arguments it now asserts for the first time. Because it did not do so, we cannot consider these arguments. *See Lycourt-Donovan*, 152 Ohio St.3d 73, 2017-Ohio-7566, 93 N.E.3d 902, at ¶ 53; *Discount Cellular*, 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, at ¶ 66.

*Exclusion of Evidence*

**{¶ 24}** HDS asserts that the PUCO erred in upholding the attorney examiner's exclusion of certain documentary and testimonial evidence. First, HDS objects to the PUCO's affirmance of the attorney examiner's exclusion of documents that HDS obtained from Columbia in discovery. The attorney examiner excluded the documents on the grounds that HDS had failed to create a foundation for the documents with witness testimony. Because "[t]he common manner of identifying a document is through testimony of a witness with knowledge," *St. Paul Fire & Marine Ins. Co. v. Ohio Fast Freight, Inc.*, 8 Ohio App.3d 155, 158, 456 N.E.2d 551 (10th Dist.1982), citing Evid.R. 901(B)(1), we conclude that the PUCO's affirmance of the attorney examiner's ruling does not reflect an abuse of its "very broad discretion to conduct its hearings," *Greater Cleveland Welfare Rights Org. v. Pub. Util. Comm.*, 2 Ohio St.3d 62, 68, 442 N.E.2d 1288 (1982).

8

**{¶ 25}** Second, HDS challenges the PUCO's affirmance of the attorney examiner's rulings on when and whether HDS could call certain witnesses. The attorney examiner denied HDS's attempt to call Long as upon cross-examination at the beginning of HDS's case-in-chief. The attorney examiner explained that because Long's testimony was prefiled and because HDS's questions concerned the prefiled testimony, HDS had to hold its questions for Long until after Columbia called him during its defense. This is another hearing-management decision that falls squarely within the "very broad discretion" granted to the PUCO in the conduct of its hearings. *Id.* Indeed, the rules specifically empower the PUCO to "[d]etermine the order in which the parties shall present testimony and the order in which witnesses shall be examined," Ohio Adm.Code 4901-1-27(B)(2).

**{¶ 26}** HDS's other witness-related challenge concerns the PUCO's affirmance of the attorney examiner's denial of HDS's request to call Bruce and Janet Harris as witnesses on rebuttal. As with Long, the testimony of the Harrises had been prefiled. In refusing to allow the Harrises to be called again in rebuttal, the examiner noted that the case was mainly factual in nature, that the submission of irrelevant or cumulative evidence should be avoided, and that HDS had been given an opportunity to develop the facts that it believed were relevant to its case. As before, the attorney examiner's ruling here falls within the broad authority granted to the PUCO to conduct its hearings and control the manner of witness testimony. Furthermore, HDS has not identified what part of Columbia's defense it wanted the witnesses to rebut or how it has been prejudiced.

## CONCLUSION

**{¶ 27}** We affirm the PUCO's orders for the reasons set forth above.

Orders affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEGENARO, JJ., concur.

_____

Rinehart, Rishel & Cuckler, Ltd., and Grant A. Wolfe, for appellant.

Michael DeWine, Attorney General, and William L. Wright, Robert A. Eubanks, and Thomas G. Lindgren, Assistant Attorneys General, for appellee.

Brooke E. Wanchek, Stephen B. Seiple, and Joseph M. Clark, for intervening appellee.

_____