Pfeifer, J.
{¶ 1} Duke Energy Ohio, Inc. (“Duke”) sought to recover over $30 million for the costs of restoring its system following the destruction caused by Hurricane Ike. The Public Utilities Commission allowed Duke to recover roughly half that amount, finding that several of its requests lacked adequate supporting evidence. Duke has appealed, raising five propositions of law.
{¶ 2} Each of Duke’s arguments lacks merit. The commission reduced the amount that Duke could recover because it found substantial problems with the supporting evidence. Because the record confirms the commission’s finding, we affirm.
*488 Factual and Procedural Background
{¶ 3} In September 2008, powerful winds unleashed by Hurricane Ike swept north across the Midwest. The storm left almost two million Ohioans without power and inflicted major damage on the electrical infrastructure of Duke and its affiliates in Kentucky and Indiana. It took nine days for Duke to restore power to all of its customers. Employees of the three affected Duke companies (Ohio, Indiana, and Kentucky) performed restoration work in all three jurisdictions, along with employees of Duke’s corporate service company and independent contractors.
{¶ 4} The commission permitted Duke to compile its storm costs and file an application to recover those costs. In re Application of Duke Energy Ohio, Pub. Util. Comm. No. 08-709-EL-AIR, 2009 WL 124218 (Jan. 14, 2009). Duke filed a cost-recovery application, asking for reimbursement of roughly $30.7 million. This case is Duke’s appeal from the commission’s order approving recovery of some but not all of the costs for which Duke applied. As Duke acknowledged in its application, it bore “the burden of proof of demonstrating that the costs were prudently incurred and reasonable.”
{¶ 5} Other parties to the case argued that Duke was not entitled to the full amount sought. The commission’s staff reviewed Duke’s application and proposed reducing Duke’s recovery by roughly $1 million. The Office of the Ohio Consumers’ Counsel (“OCC”), which had intervened, also investigated Duke’s request. Its witness pointed out numerous problems with the evidence supporting Duke’s request and argued that Duke should recover approximately $5.1 million.
{¶ 6} The commission agreed that there were significant problems with Duke’s evidence and allowed Duke to recover $14.1 million, about half of what it had requested. Duke has now appealed.
Discussion
{¶ 7} Duke raises five propositions of law, all variations on the theme that the commission’s order lacked record support. We are not persuaded.
{¶ 8} Duke seems to generally misapprehend a basic point of procedure in this case — namely, that it bore the burden of proving that its expenses were reasonable. It acknowledged this point in its application, stating that it “will bear the burden of proof of demonstrating that the costs were prudently incurred and reasonable.” So Duke had to prove a positive point: that its expenses had been prudently incurred. The commission did not have to find the negative: that the expenses were imprudent. Accordingly, if the evidence was inconclusive or questionable, the commission could justifiably reduce or disallow cost recovery.
*489 {¶ 9} On appeal, Duke shows, at best, that other parties did not conclusively prove that the claimed expenses were unreasonable or imprudent — but that claim is irrelevant because those parties did not bear the burden of proof. Duke had not been given a blank check, but an opportunity to prove to the commission that it had reasonably and prudently incurred the costs it sought to recover. In certain respects, it failed to make the most of that opportunity.
{¶ 10} The commission’s reasons for reducing the amount that Duke can recover make sense. And Duke’s arguments on appeal, to which we now turn, do not upset the commission’s findings.
1. Duke did not establish that giving supplemental pay to salaried workers was reasonable
{¶ 11} In its first proposition of law, Duke argues that the commission erred by “precluding recovery of supplemental compensation for salaried employees.” Salaried employees usually do not receive extra pay for extra hours of work, but Duke requested roughly $3.2 million to compensate itself for making supplemental payments to salaried workers. Duke explained to the commission that these bonuses were paid “[a]t management’s discretion,” but the company did not put on testimony explaining what the employees had done to deserve the extra pay. The commission denied recovery, finding that Duke had “failed to show a reasonable basis on which the supplemental compensation was determined.”
{¶ 12} Duke has not shown error in this decision. Duke’s arguments do not refute the commission’s finding that Duke did not explain its bonus-pay decisions. The company argues that salaried employees played “a key role” in restoring service and that by having its salaried employees do extra work, the company reduced the need to use expensive contractors. Therefore, it argues, the employees deserved extra pay. Duke’s argument may support the general decision to use salaried employees, but it does not address the commission’s concern that Duke did not explain specifically how it had determined the amount of the bonuses.
{¶ 13} Duke has not pointed to evidence that contradicts the commission’s finding that Duke failed to show a reasonable basis on which the supplemental compensation was determined. On the contrary, the only witness Duke cites in support of its bonus-pay decisions had no personal knowledge of why any particular employee received a particular bonus. When asked, “[W]ho determines how much [supplemental compensation] someone is paid?” the witness answered, “[T]he establishment of what will be paid in terms of magnitude of supplemental compensation * * * is not part of my job duties, nor was I involved in that decision.” This affirmatively supports what the commission found: Duke did not explain how it determined the specific awards of supplemental compensation.
*490 {¶ 14} Duke’s other argument — that “the Commission has no jurisdiction over which employees were paid and how much such employees received” — misses the point. The jurisdictional issue is not whether the commission may tell Duke how much to pay its employees. The issue is whether the commission has jurisdiction to review the prudence of the expenses a utility seeks to recover. Duke has not only failed to raise any argument against such jurisdiction, it expressly submitted to it in filing the underlying application.
{¶ 15} We reject Duke’s first proposition of law.
2. Duke did not provide adequate record support for its fact-bound argument
{¶ 16} In its second proposition of law, Duke challenges the commission’s decision to disallow $371,196 on the grounds that it reflected “salaries * * * already recovered in Duke’s base rates.” Duke argues that this sum did not represent salaries but instead represented the costs associated with the time that certain employees allocated to the power-restoration efforts. The company asserts that the sum “represents actual costs incurred by Duke Energy Ohio, over and above the labor costs that form a part of its base rates” and were “specifically related to the cleanup effort.”
{¶ 17} Several essential premises of Duke’s arguments are factual: Duke incurred certain costs, these costs related to the cleanup effort, and Duke’s current base rates do not already recover these costs. But these factual assertions are unsupported by citations to the record. The pertinent section of Duke’s brief contains a single citation to the record, which leads to the second page of a 51-page spreadsheet that OCC had introduced into the record. The page contains no explanation or narrative and appears to be unaccompanied by sworn testimony. It is unclear how it supports any of Duke’s factual assertions.
{¶ 18} Duke’s failure to support essential factual assertions with citations to the record is fatal to its argument. Allnet Communications Servs., Inc. v. Pub. Util. Comm., 70 Ohio St.3d 202, 206, 638 N.E.2d 516 (1994) (rejecting argument when appellant “provided no further reasoning or record citations to support” it); cf. State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd., 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 13 (“Appellate attorneys should not expect the court ‘to peruse the record without the help of pinpoint citations’ to the record”), quoting Day v. N. Indiana Pub. Serv. Corp., 164 F.3d 382, 384 (7th Cir.1999). On this basis, we reject Duke’s second proposition of law.
3. Duke shows no error in the commission’s reduction of recovery for labor loaders and supervision costs
{¶ 19} In its third proposition, Duke argues that the commission unreasonably disallowed recovery for approximately $2 million in “labor loaders and supervision *491 costs.” (“Labor loaders” refers to “such items as the cost of fringe benefits and payroll taxes” associated with labor costs.) This disallowance was tied to the reductions discussed in the first and second propositions of law.
{¶ 20} Duke makes several arguments concerning the disallowance of the labor loaders, but none has merit. First, Duke claims that there should have been no reductions because these costs were tied to the supplemental compensation that Duke argued was unlawfully disallowed in its first two propositions of law. As we have rejected Duke’s first two propositions of law, this argument is a nonstarter.
{¶ 21} Alternatively, Duke argues that even if some labor-loader reduction were warranted, the commission cut too much. The commission, it says, cannot rely on “a generalized formula” to reduce costs when “a utility submits discrete testimony on the charges it has incurred.” Duke cites no legal authority in support of this proposition. Even if it were true, Duke does not provide the necessary record support. It states that it “submitted detailed evidence of its labor costs, including labor loaders and supervision,” but it provides no citation to the record in support of this assertion and makes no further explanation.
{¶ 22} Finally, Duke claims that the commission “fail[ed] to account for reductions amounting to $800,461 that were previously implemented by [Duke]” at the commission’s suggestion. Here, Duke does refer to the record, but to no effect. It cites no testimony but directs us, without explanation, to page 21 of a 142-page spreadsheet exhibit entitled “OCC-POD-02-021 attachment.” What this particular array of numbers means is not self-evident, but it does not clearly establish that the commission erred in making this reduction.
{¶ 23} Duke also argues that the commission erred in calculating the reduction of allowed supervision costs. Duke again fails to marshal supporting evidence for its argument. Its theory seems to be that the supervision costs were tied to an allowed expense (base salaries) and not a disallowed one (supplemental compensation), and therefore that the supervision costs should have been recoverable. But the only support Duke provides for this argument is a “see generally ” cite to a 142-page spreadsheet exhibit shared during discovery. We do not see how these pages, filled with thousands of rows of numbers, support Duke’s argument.
{¶ 24} We reject the third proposition of law.
4. Duke has not shown error in the commission’s disallowance of labor costs it paid for its affiliates’ employees
{¶ 25} Duke’s fourth proposition concerns its attempt to recover the labor costs it paid for employees of its Indiana and Kentucky affiliates who performed restoration work in Ohio. OCC had raised the concern that Ohio ratepayers might be “charged for work performed by employees of Duke affiliates” who “are paid already by ratepayers in other jurisdictions.” To remedy this, OCC *492 proposed an offset: reduce the recovery of payments for labor by employees of affiliates by any payments that affiliates made to Duke for labor supplied by Ohio employees in other jurisdictions. OCC sought information from Duke regarding such payments, but the company “refused to answer any interrogatories or data requests that deal[t] with other jurisdictions.” Lacking this information, OCC’s witness used some publicly available information to estimate how much Duke had been paid by the affiliates and thus how much to reduce Duke’s recovery.
{¶ 26} Persuaded by OCC, the commission found that Duke “did not sustain its burden to prove that all of the affiliate-related costs * * * should be recovered.” Thus, it reduced Duke’s recovery by the amount recommended by OCC, approximately $1.3 million. On rehearing, the commission affirmed its decision, specifically pointing out that the record was “essentially devoid of any evidence rebutting” the commission’s conclusion that the reduction was justified. Duke needs to show this court that the opposite was true, namely, that record evidence conclusively showed how much Duke had been paid by its affiliates. But Duke identifies only a single piece of information in rebuttal: an “accounting adjustment” for such payments in the amount of $3,385. This evidence does not help Duke’s cause for several reasons.
{¶ 27} First, Duke does not actually cite evidence showing a $3,385 accounting adjustment. It cites two pages of its supplement — pages 105 and 500 — neither of which shows the claimed adjustment. Page 105 is a discovery request from OCC. Duke’s only response on that page is “See Attachment OCC-POD-02-021.” Page 500 contains lines 1063 to 1121 of a dense spreadsheet. What should be made of either page is unclear.
{¶ 28} Moreover, even if we accept for the sake of argument that the record showed a $3,385 accounting adjustment, other evidence contradicted it. OCC’s witness introduced evidence that Duke’s Kentucky affiliate had disclosed to Kentucky regulators that it had been charged just under $308,000 for the labor of Duke’s employees — much higher than the claimed $3,385. Faced with such contradictory evidence, the commission was entitled to reduce Duke’s recovery. That the commission used an estimate to do so avails Duke nothing because Duke had the burden of proof, and it has not adduced any evidence countering the commission’s reduction.
{¶ 29} Duke’s other arguments on this issue are insubstantial and need not be discussed.
{¶ 30} We reject Duke’s fourth proposition of law.
5. Duke has not shown that the commission erred in reducing Duke’s recovery for contractor costs
{¶ 31} In Duke’s fifth and final proposition of law, it argues that the commission erred in reducing its recovery of payments to contractors. Duke asked for *493 approximately $13 million for payments to contractors, but its supporting data suggested that some of the work by those contractors had been done in other states. For example, internal spreadsheets listed Duke’s Indiana and Kentucky affiliates as the “PayCo” or “Pay Company” for some of the contractors. Likewise, OCC’s witness testified that information concerning work location had been whited out “over and over again on different time sheets.” In at least one case, however, the last three letters of the word “Kentucky” were legible. Other sheets lacked any information regarding work location. Based on these “discrepancies in the documentation for contractor expenses,” the commission found that Duke had “failed to substantiate what [its actual contractor] costs are.” Accordingly, it permitted Duke to recover only a portion of those costs, about $3.5 million.
{¶ 32} Duke’s arguments against these reductions do not warrant a reversal. Duke has shown neither that the evidence of discrepancies was faulty nor that the weight of the evidence unquestionably compelled a decision in its favor. In the pertinent section of its brief, Duke at best offers an alternative take on the evidence. As we have explained before, reweighing the evidence is outside the scope of our function on appeal. Util. Serv. Partners, Inc. v. Pub. Util. Comm., 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 35.
{¶ 33} We reject Duke’s fifth proposition of law.
Conclusion
{¶ 34} For the foregoing reasons, we affirm the commission’s order.
Order affirmed.
O’Connor, C.J., and Lanzinger, Cupp, and McGee Brown, JJ., concur.
Lundberg Stratton and O’Donnell, JJ., dissent.