[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.,* Slip Opinion No. 2018-Ohio-4697.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4697

IN RE APPLICATION OF OHIO POWER COMPANY TO ESTABLISH A STANDARD SERVICE OFFER IN THE FORM OF AN ELECTRIC SECURITY PLAN, ETC.; OFFICE OF OHIO CONSUMERS' COUNSEL ET AL., APPELLANTS; OHIO POWER COMPANY, INTERVENING APPELLEE; PUBLIC UTILITIES COMMISSION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.,* Slip Opinion No. 2018-Ohio-4697.]

*Public utilities—Electric-security plan—Party seeking reversal of an order of the commission must show that it has been or will be harmed by the order—No harm or prejudice to ratepayers was caused by Public Utilities Commission's approval of a zero-rate power-purchase rider—Appeal dismissed.*

(No. 2017-0749—Submitted June 26, 2018—Decided November 27, 2018.)

APPEAL from the Public Utilities Commission,

Nos. 13-2385-EL-SSO and 13-2386-EL-AAM.

**O'CONNOR, C.J.**

{¶ 1} Appellants, Office of Ohio Consumers' Counsel ("OCC") and the Ohio Manufacturers' Association Energy Group ("OMAEG"), have appealed appellee Public Utility Commission's decision to approve the third electric-security plan ("ESP") of intervening appellee, Ohio Power Company. OCC and OMAEG challenge the decision on the ground that the commission's approval of the Power Purchase Agreement ("PPA") Rider as a component of the ESP was reversible error. Because we determine that OCC and OMAEG have failed to demonstrate prejudice or harm caused by the ESP Order, we dismiss the appeal.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} R.C. 4928.141(A) requires electric-distribution utilities to make a "standard service offer" of generation service to consumers in one of two ways: through a "market-rate offer" under R.C. 4928.142 or an ESP under R.C. 4928.143. Ohio Power filed an application with the commission seeking approval of its third ESP. Pub. Util. Comm. Nos. 13-2385-EL-SSO and 13-2386-EL-AAM ("ESP case"). R.C. 4928.143 does not provide a detailed mechanism for establishing rates under an ESP. An ESP may contain any number of provisions within a variety of categories, and it shall be approved if the commission finds that the ESP is "more favorable in the aggregate" than the expected results of a market-rate offer. R.C. 4928.143(C)(1).

{¶ 3} On February 25, 2015, the commission approved Ohio Power's third ESP. As part of that ESP, the commission authorized the PPA Rider. Pub. Util. Comm. Nos. 13-2385-EL-SSO and 13-2386-EL-AAM (Feb. 25, 2015) ("ESP Order"). As originally proposed, the PPA Rider was based on Ohio Power's agreement to purchase power from the Ohio Valley Electric Corporation ("OVEC"). The intended purpose of the rider was to provide a financial hedge against fluctuating prices in the wholesale-power market in order to stabilize retail

2

customer rates. The PPA Rider works as either a charge or a credit to Ohio Power's retail customers. As designed, Ohio Power purchases energy and capacity under its contract with OVEC. PJM Interconnection ("PJM") operates a competitive wholesale electricity market where rates are set.[1] If the revenue generated from sales into the PJM market is lower than the costs of the power, Ohio Power's customers would pay a surcharge to Ohio Power through the PPA Rider to make up the difference. But if the PJM market rates are higher than the power costs, customers would receive a credit through the PPA Rider. According to Ohio Power, OVEC's costs are relatively stable in comparison to the wholesale-power market, and they rise and fall in a manner that is countercyclical to the market, thereby creating a hedge for ratepayers.

{¶ 4} Although the commission approved the PPA Rider mechanism in the ESP case, it refused to allow Ohio Power to recover any costs through the rider. The PPA Rider was approved only as a placeholder rider with the rate set at zero. The commission required Ohio Power to demonstrate in a separate proceeding that it was entitled to cost recovery through the PPA Rider.

{¶ 5} OCC and OMAEG sought rehearing of the ESP Order in the ESP case. And in a separate proceeding, Ohio Power made a request to recover its costs under the PPA Rider, which the commission granted ("PPA Rider case"). Ratepayers started paying charges under the PPA Rider on January 1, 2017, three months before the commission issued the final rehearing entry in the ESP case.

{¶ 6} OCC and OMAEG have instituted two appeals. The present appeal is from the ESP Order in the ESP case; OCC and OMAEG challenge only the zero-rate placeholder PPA Rider and its effect on the commission's approval of the ESP. The commission's order in the PPA Rider case allowing Ohio Power to recover

---

[1] PJM Interconnection is a multiutility regional transmission organization designated by the Federal Energy Regulatory Commission to coordinate the movement of wholesale electricity in all or part of 13 states—including Ohio—and the District of Columbia.

costs under that rider is the subject of an appeal in Supreme Court case No. 2017-0752.

**{¶ 7}** In the present appeal, because the commission's ESP Order did not authorize Ohio Power to recover any revenue from ratepayers through the placeholder PPA Rider, we sua sponte ordered the parties to file supplemental briefs addressing whether this appeal should be dismissed for lack of prejudice. 152 Ohio St.3d 1434, 2018-Ohio-1454, 95 N.E.3d 418.

## II. STANDARD OF REVIEW

**{¶ 8}** "R.C. 4903.13 provides that a [commission] order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. An appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id*. We review questions of law de novo. *MCI Telecommunications Corp. v. Pub. Util. Comm.*, 38 Ohio St.3d 266, 268-269, 527 N.E.2d 777 (1988).

## III. ANALYSIS

**{¶ 9}** It is well settled that this court will not reverse an order of the commission unless the party seeking reversal shows that it has been harmed or prejudiced by the order. *Holladay Corp. v. Pub. Util. Comm.*, 61 Ohio St.2d 335, 402 N.E.2d 1175 (1980), syllabus. For the reasons that follow, we find that OCC

and OMAEG have not shown harm or prejudice caused by the ESP Order that is the subject of this appeal.

**A. OCC has not demonstrated that ratepayers suffered actual harm or prejudice from the ESP Order**

{¶ 10} OCC first argues that concrete harm stems from the ESP Order because customers have been paying unlawful ESP rates since June 2015. According to OCC, the commission acted unlawfully and unreasonably when it approved the ESP without properly analyzing all the terms and conditions of the plan as required by R.C. 4928.143(C)(1). Under this provision, the commission shall approve an ESP if it is "more favorable in the aggregate" than an expected market-rate offer. The commission conducted the statutory test under R.C. 4928.143(C)(1) in the ESP proceedings. The commission, however, found that it was not necessary to quantify the impact of the placeholder PPA Rider in its analysis given that the rider was approved with a rate of zero, any future costs associated with it were then unknown, and any rate would be imposed only after additional proceedings.

{¶ 11} OCC asserts that the commission's failure to consider the costs and benefits of the PPA Rider as required under the statutory ESP test has resulted in ratepayers having to pay unlawful ESP rates. There is no merit to this argument. OCC never explains how the commission was supposed to evaluate the costs and benefits of the PPA Rider when those benefits and costs were not known at that time. Moreover, even if the commission did err in failing to fully evaluate *the PPA Rider* under the statutory test, OCC has not shown how this makes *the other rates* charged under the ESP unlawful. To show that the ESP was unlawful, OCC would need to show that weighing the PPA Rider under the statutory test would have made the ESP less favorable in the aggregate than an expected market-rate offer. R.C. 4928.143(C)(1). Yet OCC did not adduce any supporting evidence or otherwise explain how the commission's consideration of the costs and benefits of the PPA

Rider (which were not known) would have compelled the commission to reject the ESP under the statutory test.

{¶ 12} Second, OCC alleges that it was harmed because it was prevented from effectively challenging the PPA Rider in the ESP case because there was no information about the costs and details of the PPA Rider in that case. There is no merit to this argument. OCC's claim of harm ignores that the commission did consider the impact of the PPA Rider when it conducted the statutory test under R.C. 4928.143(C)(1) in the PPA Rider case. At the request of certain parties, the commission conducted the statutory test a second time in the PPA Rider case as part of its determination to allow Ohio Power to recover costs under the PPA Rider. That is, the commission specifically considered the costs and benefits of the PPA Rider when it allowed Ohio Power to recover costs through the rider. After its review, the commission found that when the projected net positive benefits of the PPA Rider were combined with the existing net positive results of the statutory test conducted in the ESP case, the proposed ESP was more favorable in the aggregate than an expected market-rate offer. We find that any harm caused by the commission's alleged failure to properly conduct the statutory test in the ESP case was cured when the commission conducted the test in the PPA Rider case.

{¶ 13} Finally, OCC maintains that the commission's finding that the PPA Rider is a "charge" under R.C. 4928.143(B)(2)(d) necessarily caused harm to consumers, because the rider is unlawful. But even if the PPA Rider is an unlawful charge, OCC does not explain how consumers are necessarily harmed by a charge that recovers no revenue from consumers. We therefore reject this argument.

## B. We decline to address appellants' claims that ratepayers were at risk of imminent or future harm rising from the ESP Order

{¶ 14} OCC and OMAEG both argue that ratepayers were at risk of imminent or future harm from the ESP Order. OCC asserts that harm to consumers from the ESP Order "was concrete and * * * imminent" because approving the PPA

Rider as a placeholder rider was a "prelude" to a rate increase. OMAEG similarly claims that its ratepayers suffered "irreparable harm" from the ESP Order because the commission established the PPA Rider in the ESP case and then used that rider in a later proceeding to increase rates. Because OCC and OMAEG are able to assert claims of actual harm or prejudice in the PPA Rider appeal, *see* Supreme Court case No. 2017-0752, however, there is no reason for us determine here whether there is merit to this argument.

### C. OMAEG has not demonstrated harm from regulatory delay

{¶ 15} OMAEG argues that ratepayers were harmed by the establishment of the placeholder PPA Rider in the ESP Order because the commission took years to issue a final, appealable order in the ESP case. OMAEG has not carried its burden here. As discussed, the PPA Rider approved in the ESP Order did not allow Ohio Power to recover any costs from customers. So OMAEG's claim that its "customers have suffered substantial monetary injury" due to the delay is not supported by the record.

{¶ 16} OMAEG also claims that it suffered prejudice because the commission thwarted its appellate rights by waiting to rule on rehearing applications until after approving cost recovery through the PPA Rider. The commission did defer ruling on certain rehearing issues related to the PPA Rider due to uncertainty with respect to federal wholesale-energy-market reform proposals, environmental regulations, and federal litigation involving similar state-approved wholesale-energy charges. The federal litigation included a challenge to the proposed PPA Rider at the Federal Energy Regulatory Commission. *Electric Power Supply Assn. v. AEP Generation Resources*, 155 F.E.R.C. ¶ 61,102 (Apr. 27, 2016). Even so, there are a number of problems with OMAEG's claim, and we reject it.

{¶ 17} First, OMAEG's argument is speculative, as no evidence exists that the commission intentionally refused to rule promptly. Second, OMAEG does not

engage in the type of analysis necessary to prevail on this issue. As noted, the commission explained why it deferred ruling on certain rehearing issues related to the PPA Rider. Yet OMAEG makes no argument that the delay at the commission was unreasonable or unjustified. We therefore reject its argument on this point.

## IV. CONCLUSION

{¶ 18} The party seeking reversal of the commission's order must demonstrate prejudice or harm from the order on appeal. *Hollady Corp.*, 61 Ohio St.2d 335, 402 N.E.2d 1175, at syllabus; *AK Steel Corp. v. Pub. Util. Comm.*, 95 Ohio St.3d 81, 88, 765 N.E.2d 862 (2002). OCC and OMAEG have not shown any harm or prejudice to ratepayers caused by the commission's approval of the PPA Rider in the ESP Order. As appellants have failed to carry their burden before this court, we dismiss this appeal.

Appeal dismissed.

O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Bruce J. Weston, Maureen R. Willis, and William J. Michael, for appellant Office of the Ohio Consumers' Counsel.

Carpenter Lipps & Leland, L.L.P., and Kimberly W. Bojko, for appellant Ohio Manufacturers' Association Energy Group.

Michael DeWine, Attorney General, and Steven L. Beeler, William L. Wright, and Werner L. Margard III, Assistant Attorneys General, for appellee.

Steven T. Nourse, Matthew S. McKenzie, and Christen M. Blend; and Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, and L. Bradfield Hughes, for intervening appellee.

_____