**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.,* Slip Opinion No. 2020-Ohio-143.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2020-Ohio-143**

**IN RE APPLICATION OF OHIO POWER COMPANY FOR AUTHORITY TO ESTABLISH A STANDARD SERVICE OFFER PURSUANT TO R.C. 4928.143 IN THE FORM OF AN ELECTRIC SECURITY PLAN; OFFICE OF OHIO CONSUMERS' COUNSEL, APPELLANT; PUBLIC UTILITIES COMMISSION, APPELLEE; OHIO POWER COMPANY, INTERVENING APPELLEE.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.,* Slip Opinion No. 2020-Ohio-143.]**

*Public utilities—Electric-security plan—Public Utilities Commission had subject-matter jurisdiction to approve power-purchase-agreement rider—Public Utilities Commission's approval of smart-city rider upheld because R.C. 4928.143(B)(2)(H) permits an electric-security plan to include certain provisions that might otherwise violate a different statute in R.C. Title 49—Public Utilities Commission's approval of renewable-generation rider on a placeholder basis upheld because no harm or prejudice to ratepayers has been shown—Order affirmed.*

(No. 2018-1396—Submitted October 22, 2019—Decided January 22, 2020.)

APPEAL from the Public Utilities Commission, Nos. 16-1852-EL-SSO
and 16-1853-EL-AAM.

_____

**KENNEDY, J.**

{¶ 1} This is an appeal as of right from the order of appellee, the Public Utilities Commission of Ohio ("PUCO"), approving and modifying a previously approved electric-security plan of intervening appellee, Ohio Power Company. Appellant, the Office of the Ohio Consumers' Counsel ("OCC") challenges three riders authorized by that order. Those riders are referred to as the Power Purchase Agreement Rider, the Smart City Rider, and the Renewable Generation Rider.

{¶ 2} However, this court lacks jurisdiction to review the OCC's challenge to the Power Purchase Agreement Rider because the OCC did not include the challenge in an application for rehearing. Further, because the OCC has failed to show that the PUCO lacked statutory authority to approve the Smart City Rider pursuant to R.C. 4928.143(B)(2)(h) and because the OCC has not established that approving the Renewable Generation Rider on a placeholder basis will harm or prejudice ratepayers, the OCC has failed to satisfy its burden to demonstrate that the PUCO acted unreasonably or unlawfully in this case.

{¶ 3} For these reasons, we affirm the order of the PUCO.

**Facts and Procedural History**

{¶ 4} Electric-distribution utilities such as Ohio Power must provide consumers within their certified territories a "standard service offer of all competitive retail electric services necessary to maintain essential electric service * * *, including a firm supply of electric generation service." R.C. 4928.141(A). The offer may take the form of a market-rate offer under R.C. 4928.142 or an electric-security plan under R.C. 4928.143.

{¶ 5} In May 2016, Ohio Power applied for the PUCO's approval to, among other things, extend its third electric-security plan through May 31, 2024. An

attorney examiner issued an order directing Ohio Power to refile its application under a new case number, and Ohio Power filed its amended application in November 2016. Ohio Power later filed a stipulation seeking resolution of the issues in the case, which the OCC opposed. After conducting a hearing, the PUCO modified and approved the stipulation, authorizing Ohio Power to extend its electric-security plan through May 31, 2024, and allowing Ohio Power to continue implementing, or begin implementing, the three riders that are at issue in this appeal. In its opinion and order, the PUCO designated Ohio Power's amended application as Ohio Power's proposed fourth electric-security plan.

{¶ 6} First, the PUCO authorized Ohio Power to continue the Power Purchase Agreement Rider through the extended term of the electric-security plan. The Power Purchase Agreement Rider permits Ohio Power to recover costs associated with its contractual entitlement to the power generated by the Ohio Valley Electric Corporation ("OVEC"). As we previously explained in *In re Application of Ohio Power Co.*, 155 Ohio St.3d 320, 2018-Ohio-4697, 121 N.E.3d 315, ¶ 3, the PUCO intended the Power Purchase Agreement Rider "to provide a financial hedge against fluctuating prices in the wholesale-power market in order to stabilize retail customer rates," providing a credit to ratepayers when the costs of power purchased from OVEC are cheaper than the wholesale-power market price and imposing a surcharge on ratepayers when Ohio Power's purchase of OVEC's power is more expensive than the wholesale price.

{¶ 7} Second, the PUCO authorized Ohio Power to implement the Smart City Rider, capped at a total of $21.1 million over four years, to recover the costs associated with two technology-demonstration projects: a rebate program to encourage the construction of electric-vehicle charging stations and a program for the development of microgrids, which are small-scale power grids that can operate independently or in conjunction with the overall electric grid and which may include small-scale-generation and battery-storage systems.

**{¶ 8}** Third, the PUCO authorized Ohio Power to implement the Renewable Generation Rider on a placeholder basis (i.e., with a zero rate), permitting Ohio Power to recover costs from future renewable-generation projects to be approved by the PUCO at a later time.

**{¶ 9}** After the PUCO issued its order, the OCC applied for a rehearing, asserting eight assignments of error challenging Ohio Power's electric-security plan, the Smart City Rider, the Renewable Generation Rider (and other riders approved as placeholders), a procedural ruling regarding a rider that is not at issue in this case, and various other aspects of the propriety of the PUCO's decision to approve the stipulation. The PUCO denied the OCC's application for rehearing, and the OCC appealed to this court, asserting three propositions of law.

### Law and Analysis

*Standard of Review*

**{¶ 10}** R.C. 4903.13 empowers this court to reverse, vacate, or modify a final order of the PUCO if it is unlawful or unreasonable. This court "will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that" the decision "was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty." *In re Application of Ohio Edison Co.*, 157 Ohio St.3d 73, 2019-Ohio-2401, 131 N.E.3d 906, ¶ 8. However, this court has "complete and independent power of review as to questions of law." *MCI Telecommunications Corp. v. Pub. Util. Comm.*, 38 Ohio St.3d 266, 268, 527 N.E.2d 777 (1988).

### *The Power Purchase Agreement Rider*

**{¶ 11}** The OCC challenges the Power Purchase Agreement Rider by arguing that the PUCO lacked jurisdiction to approve it because the Federal Power Act, 16 U.S.C. 791a et seq., vests in the Federal Energy Regulatory Commission ("FERC") exclusive jurisdiction over wholesale sales of electricity in the interstate

market. According to the OCC, the Power Purchase Agreement Rider intrudes on FERC's exclusive jurisdiction by allowing Ohio Power to charge ratepayers more for the OVEC power sold in the interstate market than the wholesale rate established in the federally regulated, competitive wholesale market. The OCC relies on the United States Supreme Court's decision in *Hughes v. Talen Energy Marketing, L.L.C.*, which held that a state's utility-regulating commission had "invade[d] FERC's regulatory turf" by guaranteeing a rate to a wholesale-power-market participant that differed from the rate that FERC had deemed just and reasonable under the Federal Power Act. ___ U.S. ___, 136 S.Ct. 1288, 1297, 194 L.Ed.2d 414 (2016). However, the OCC failed to preserve this argument in its application for a rehearing.

{¶ 12} Our jurisdiction to review decisions of the PUCO emanates from Article IV, Section 2(B)(2)(d) of the Ohio Constitution, which grants us "[s]uch revisory jurisdiction of the proceedings of administrative officers or agencies as may be conferred by law." This provision permits the General Assembly to establish and limit the court's power of appellate review over decisions from administrative agencies such as the PUCO. *See generally Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, ¶ 13 (discussing this court's appellate jurisdiction to review decisions of the Board of Tax Appeals).

{¶ 13} R.C. 4903.13 confers appellate jurisdiction on this court to review the final orders of the PUCO, providing that any party to a proceeding may file a notice of appeal with the PUCO "setting forth the order appealed from and the errors complained of." Another statute—R.C. 4903.10—permits a party to file an application for the PUCO to rehear any matter determined in the proceeding after the PUCO has issued its initial order. That statute provides that the "application shall be in writing and shall set forth specifically the ground or grounds on which the applicant considers the order to be unreasonable or unlawful. *No party shall in*

*any court urge or rely on any ground for reversal, vacation, or modification not so set forth in the application.*"  (Emphasis added.)  R.C. 4903.10(B).

{¶ 14} "We have 'long held that setting forth specific grounds for rehearing is a jurisdictional prerequisite for our review' " of an order of the PUCO.  *In re Complaint of Harris Design Servs. v. Columbia Gas of Ohio, Inc.*, 154 Ohio St.3d 140, 2018-Ohio-2395, 112 N.E.3d 858, ¶ 20, quoting *In re Complaint of Cameron Creek Apts. v. Columbia Gas of Ohio, Inc.*, 136 Ohio St.3d 333, 2013-Ohio-3705, 995 N.E.2d 1160, ¶ 23.  We have therefore explained that a party's failure to present a claim to the PUCO on rehearing "jurisdictionally bars" this court's consideration of that claim on appeal.  *In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 55.

{¶ 15} The OCC does not question this caselaw; rather, the OCC maintains that those concerns do not apply in this case because the OCC has challenged the PUCO's subject-matter jurisdiction to approve the rider, urging that Congress has vested FERC with exclusive jurisdiction over wholesale rates.

{¶ 16} In *In re Complaint of Pilkington N. Am., Inc.*, we indicated that a party appealing from a PUCO order can attack the subject-matter jurisdiction of the PUCO notwithstanding the failure to raise that argument in an application for rehearing.  145 Ohio St.3d 125, 2015-Ohio-4797, 47 N.E.3d 786, ¶ 21-22.  We distinguished between the lack of subject-matter jurisdiction and an error in the exercise of that jurisdiction:

> When an administrative agency renders a decision without subject-matter jurisdiction, the order is void and subject to challenge at any time.  * * * In contrast, a wrong decision made by an agency with subject-matter jurisdiction is not void, but merely voidable.  That is, errors in the exercise of jurisdiction can be waived and must be challenged on appeal.

6

*Id.* at ¶ 22.

{¶ 17} R.C. 4905.04 vests the PUCO generally "with the power and jurisdiction to supervise and regulate public utilities," and R.C. 4928.143(A) specifically authorizes the PUCO to review an electric-distribution utility's application for an electric-security plan. And we have stated that the PUCO's "jurisdiction over rates and rate-related matters is unquestionable and exclusive." *In re Complaint of Pilkington N. Am.* at ¶ 23.

{¶ 18} The OCC relies on *Internatl. Longshoremen's Assn., AFL-CIO v. Davis*, 476 U.S. 380, 388, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), for the proposition that Congress has the power to establish an exclusive federal forum to adjudicate questions of federal law, thereby preempting a state tribunal's concurrent jurisdiction over that subject matter. In *Internatl. Longshoremen's Assn.*, the United States Supreme Court held that in cases in which state law is completely preempted by the National Labor Relations Act, 29 U.S.C. 151 et seq., "the state courts lack the very power to adjudicate the claims that trigger pre-emption" and cannot decline to address a claim of preemption based on noncompliance with state procedural rules regarding waiver. *Id.* at 398-399. Based upon this authority, the OCC maintains that it "did not waive, and could not have waived, its preemption argument because it challenges the PUCO's jurisdiction—the PUCO's very authority to adjudicate [Ohio Power's] wholesale rates."

{¶ 19} However, there is a difference "between pre-emption of a state's substantive law and pre-emption of a state court's power to adjudicate." *Reithmiller v. Blue Cross & Blue Shield of Michigan*, 824 F.2d 510, 512 (6th Cir.1987). The United States Supreme Court has explained that unless Congress has provided a clear statement that a statutory limitation deprives a tribunal of subject-matter jurisdiction, the courts should treat that limitation as nonjurisdictional. *Gonzalez v. Thaler*, 565 U.S. 134, 141-142, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012). And

federal courts have held that the Federal Power Act does not deprive state tribunals of the power to adjudicate claims that the act preempts state law. *Northeastern Rural Elec. Membership Corp. v. Wabash Valley Power Assn., Inc.*, 707 F.3d 883, 893, 895-896 (7th Cir.2013); *Metro. Edison Co. v. Pennsylvania Pub. Util. Comm.*, 767 F.3d 335, 360, 364 (3d Cir.2014). Rather, " 'when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court.' " *Id.* at 364, quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149-150, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988).

{¶ 20} As the United States Court of Appeals for the Third Circuit explained in *Metro. Edison Co.*, although the Federal Power Act "grants FERC exclusive jurisdiction over certain matters," *id.* at 360, including the authority to regulate wholesale sales of electricity in the interstate market, *id.* at 341, Congress has not "divested state utility agencies or state courts of jurisdiction to hear cases requiring an adjudication" regarding the scope of FERC's regulatory authority, *id.* at 360. The court stated, "The [Federal Power Act] plainly leaves a role for states in electricity regulation." *Id.* Therefore, unlike the federal statutes that were at issue in *Internatl. Longshoremen's Assn.*, the Federal Power Act does not completely preempt state law. *See Metro Edison Co.* at 363-364.

{¶ 21} We also recognize that Congress granted federal courts "exclusive jurisdiction" over violations of the Federal Power Act and actions brought to enforce it. 16 U.S.C. 825p. That language, however, does not provide federal courts with "broad jurisdiction over" actions brought under state law "that simply mention a duty established by the federal law." *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 306 (4th Cir.2016). The federal courts' exclusive jurisdiction established by statutes such as 16 U.S.C. 825p attaches either "when federal law creates the cause of action asserted" or when a state-law proceeding " 'necessarily [involves] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of

federal and state power." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, ___ U.S. ___, 136 S.Ct. 1562, 1570, 194 L.Ed.2d 671 (2016) (construing the Securities Exchange Act, 15 U.S.C. 78a et seq.), quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005); *see also id.* at 1568 and at fn. 3 (explaining that the jurisdictional provisions of the Securities Exchange Act and the Federal Power Act share "[m]uch the same wording").

{¶ 22} Federal jurisdiction does not attach solely because a proceeding in a state tribunal may involve a defense grounded in federal law, such as preemption. *Pressl* at 302, 306. Rather, claims premised on state law must be brought in federal court "only if their 'very success depends on giving effect to a federal requirement.' " *Id.* at 306, quoting *Merrill Lynch* at 1570.

{¶ 23} Here, Ohio Power's application for an extension of the Power Purchase Agreement Rider does not depend on federal law—it does not allege a violation of the Federal Power Act and has not been brought to enforce a duty or liability created by that act. And although the OCC asserts federal preemption as a defense to the rider, the Federal Power Act does not divest the PUCO of subject-matter jurisdiction. (And, tellingly, the OCC's argument that the PUCO lacked jurisdiction to approve the Power Purchase Agreement Rider is contradicted by the OCC's insistence that federal law does not preempt this court's power and jurisdiction to review that rider.)

{¶ 24} The PUCO had subject-matter jurisdiction to approve the Power Purchase Agreement Rider, and pursuant to R.C. 4903.10, the OCC's failure to raise a federal-preemption challenge in an application for rehearing deprives this court of jurisdiction to consider this issue in the first instance. We therefore dismiss the OCC's first proposition of law.

9

*The Smart City Rider*

{¶ 25} The PUCO approved the new Smart City Rider to allow the recovery of costs associated with technology-demonstration projects to encourage the construction of electric-vehicle charging stations and the development of microgrids. The PUCO found that R.C. 4928.143(B)(2)(h) authorizes the rider, because the statute permits an electric-security plan to include incentive-ratemaking provisions and distribution-infrastructure and modernization-incentive provisions.

{¶ 26} R.C. 4928.143(B)(2)(h) provides that an electric-security plan may include "[p]rovisions regarding the utility's distribution service, including, without limitation and notwithstanding any provision of Title XLIX of the Revised Code to the contrary, provisions regarding * * * incentive ratemaking, and provisions regarding distribution infrastructure and modernization incentives for the electric distribution utility."

{¶ 27} The OCC contends that the Smart City Rider does not relate to distribution service under R.C. 4928.143(B)(2)(h). According to the OCC, this statute does not authorize a rider designed to foster a market for electric vehicles, to obtain data regarding the siting and charges for electric-charging stations, or to collect information for the future deployment of microgrids. The OCC maintains that "1.4 million customers should not be asked to subsidize such activity when the vast majority of them will not even be participating [in] or benefitting from these non-distribution service investments."

{¶ 28} However, although the OCC argues that the Smart City Rider is not authorized by R.C. 4928.143(B)(2)(h), the OCC "bears the burden of demonstrating that" the PUCO's decision "is against the manifest weight of the evidence or is clearly unsupported by the record." *In re Application of Ohio Power Co.*, 155 Ohio St.3d 326, 2018-Ohio-4698, 121 N.E.3d 320, ¶ 9. Whether a rider is a provision

regarding power distribution is a factual question, and the OCC fails to show, through citation to record evidence, that either the electric-charging-station program or the microgrid program is not, in fact, related to Ohio Power's distribution service, infrastructure, or modernization.

{¶ 29} We " 'are not obligated to search the record or formulate legal arguments on behalf of the parties.' " *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 28, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19. And without any reference to record evidence showing how these demonstration projects function and that they have no relation to distribution service, infrastructure, or modernization, we cannot say that the PUCO acted unreasonably or unlawfully in approving the rider. *See In re Application of Duke Energy Ohio, Inc.*, 131 Ohio St.3d 487, 2012-Ohio-1509, 967 N.E.2d 201, ¶ 18 (rejecting an appellant's argument because the appellant had failed "to support essential factual assertions with citations to the record").

{¶ 30} The OCC, quoting R.C. 4928.141(A), maintains that the rider is not " 'necessary to maintain essential electric service' " for customers, as that statute requires. However, the OCC cites no case authority holding that R.C. 4928.141(A) limits the provisions in an electric-security plan to those that are necessary to maintain essential electric service, and "[u]nsupported legal conclusions do not demonstrate error," *In re Comm. Rev. of Capacity Charges of Ohio Power Co.*, 147 Ohio St.3d 59, 2016-Ohio-1607, 60 N.E.3d 1221, ¶ 28. Further, R.C. 4928.143(B)(2)(h) permits an electric-security plan to include certain provisions regarding a utility's distribution service even if other statutes within R.C. Title 49 would otherwise prohibit them. *See In re Application of Ohio Power Co.*, 155 Ohio St.3d 326, 2018-Ohio-4698, 121 N.E.3d 320, at ¶ 19.

{¶ 31} The OCC also argues that the demonstration projects constitute an impermissible customer-funded subsidy that violates R.C. 4928.02, which

prescribes Ohio's electric-energy policies. As explained above, if the projects are permitted by R.C. 4928.143(B)(2)(h), they may be included even if they might otherwise violate another provision in R.C. Title 49. Moreover, we held in *In re Application of Ohio Power Co.* that R.C. 4928.02 neither "impose[s] strict conditions" on the PUCO nor "require[s] anything." 155 Ohio St.3d 326, 2018-Ohio-4698, 121 N.E.3d 320, at ¶ 49. Rather, the policy provisions are guidelines for the PUCO to weigh when it considers a utility proposal. *Id.* As in that case, here the PUCO "weighed these policy considerations in reviewing the stipulation" and "[t]hat alone is grounds to reject [the OCC's] argument." *Id.*

{¶ 32} The OCC's second proposition of law is not well taken.

*Renewable Generation Rider*

{¶ 33} The PUCO authorized Ohio Power to implement the Renewable Generation Rider on a placeholder basis. The OCC challenges this rider, urging that Ohio Power did not make a showing of "need" to justify it in the proceeding below. The PUCO and Ohio Power contend that including the rider is not reversible error, because no one is prejudiced by a rider that does not collect revenue. The OCC responds that "consumers are harmed and prejudiced by expending the time and resources necessary to litigate pending proceedings before the PUCO regarding a rider * * * that was unlawfully instituted in the first place."

{¶ 34} "It is well settled that this court will not reverse an order" of the PUCO "unless the party seeking reversal shows that it has been harmed or prejudiced by the order." *In re Application of Ohio Power Co.*, 155 Ohio St.3d 320, 2018-Ohio-4697, 121 N.E.3d 315, at ¶ 9. And we have previously held that a different placeholder rider included in Ohio Power's electric-security plan that similarly recovered no revenue from consumers did not harm or prejudice ratepayers. *Id.* at ¶ 13. The costs and alleged inefficiencies associated with the OCC's strategy to litigate an issue prematurely are not harm or prejudice caused by

or resulting from the order on appeal itself, and the OCC cites no authority to the contrary.

{¶ 35} The OCC's third proposition of law is not well taken.

### Conclusion

{¶ 36} We lack jurisdiction to review the merits of the OCC's challenge to the Power Purchase Agreement Rider, because the challenge was not presented in an application for rehearing. Further, the OCC has failed to cite evidence in the record supporting its view that the Smart City Rider does not relate to distribution service, infrastructure, or modernization. Finally, consumers have not been harmed or prejudiced by the PUCO's decision to implement the Renewable Generation Rider on a placeholder basis.

{¶ 37} Because the OCC has not satisfied its burden to demonstrate reversible error on the record, we affirm the order of the PUCO.

Order affirmed.

FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

_____

Bruce J. Weston, Consumers' Counsel, and Maureen R. Willis, William J. Michael, and Terry L. Etter, Assistant Consumers' Counsel, for appellant.

Dave Yost, Attorney General, and John H. Jones, Werner L. Margard III, and Robert A. Eubanks, Assistant Attorneys General, for appellee.

Steven T. Nourse and Christen M. Blend; and Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, L. Bradfield Hughes, and Eric B. Gallon, for intervening appellee.

_____